**CITY OF GARLAND, Texas and Ron Holifield, Petitioners,**

v.

**THE DALLAS MORNING NEWS, Respondent.**

No. 98–0617.

Supreme Court of Texas.

Argued March 3, 1999.

Decided Jan. 13, 2000.

Concurring Opinion by Justice Enoch April 13, 2000.

Rehearing Overruled April 13, 2000.

4. *Republic Ins. Co. v. Davis,* 856 S.W.2d 158, 163 (Tex.1993).

5. *Id.*

6. *Id.*

**354**

Michael L. Betz, Susan Lynn Mackay, Richard E. Aubin, Baxter W. Bankowsky, Scott D. Levine, Dallas, Charles M. Hinton, Jr., Brad Neighbor, Mark E. Dempsey, Garland, for Petitioners.

Paul C. Watler, Stephen E. Fox, Joel Randall Sharp, Robert B. Gilbreath, Dallas, for Respondent.

Justice BAKER delivered a plurality opinion, in which Justice HANKINSON, Justice O'NEILL, and Justice GONZALES joined.

This case involves interpreting the Texas Public Information Act, Texas Government Code Chapter 552 (the Act),[1] and presents several issues: (1) whether a governmental body can bring a declaratory judgment action against a requestor of information under the Act; (2) whether the memorandum at issue in this case is public information subject to the Act; (3) whether the Act's agency memoranda exception incorporates the deliberative process privilege, and if so, whether it exempts the memorandum here from required disclosure; and (4) whether the Act entitles parties to a jury trial on the amount of an attorney's fees award.

A majority of the Court concludes that: (1) the Act, as it existed when the request at issue occurred, does not prohibit a governmental body from seeking a declaratory judgment against a requestor of information; (2) the memorandum here is public information subject to the Act; (3) the Act's agency memoranda exception includes the deliberative process privilege but the exception does not exempt the memorandum from required disclosure; and (4) the Act entitles parties to a jury trial on the amount of an attorney's fees award. Accordingly, a majority of the Court affirms the court of appeals' judgment.

## I. BACKGROUND

In August 1993, the City of Garland's city manager prepared a memorandum addressed to the City's finance director. The memorandum purported to terminate the finance director and listed the alleged misdeeds that formed the basis for the termination. But instead of sending the memorandum to the finance director, the city manager copied and distributed it to city council members in a closed meeting to obtain their advice about how to handle the matter. After consulting with council members, the city manager decided not to send the memorandum to the finance director. The City and the finance director instead entered into settlement negotiations and the finance director ultimately resigned.

In September 1993, the Dallas Morning News sent the City a request under the Act for all written communications about the finance director's termination or his assignment to new duties. The City did not solicit an opinion from the Texas Attorney General but declined the News's request, claiming that the City did not

---

1. The Legislature amended chapter 552 of the Texas Government Code, effective September 1, 1995, and redesignated the Texas Open Records Act as the Public Information Act. *See* Act of May 29, 1995, 74th Leg., R.S., ch. 1035, § 29, 1995 Tex. Gen. Laws 5127, 5142 (effective Sept. 1, 1995). The Legislature again amended relevant parts of the Act in 1999. *See* Act of May 27, 1999, 76th Leg., R.S., S.B. 1851 (effective Sept. 1, 1999). Because the request for information in this case was made on September 13, 1993, the 1995 and 1999 amendments do not apply to this case. *See* Act of May 29, 1995, § 26(a) (limiting application of amendments to requests for information received by a governmental body before September 1, 1995); Act of May 27, 1999, § 36; *see also* HOUSE COMMITTEE ON STATE AFFAIRS, BILL ANALYSIS, Tex. S.B. 1851, 76th Leg., R.S. (1999)(stating that section 36 of the Act makes the Act operate prospectively). Therefore, all citations to the Act are to the Texas Government Code as it existed on September 13, 1993.

possess any public records responsive to the request. The City then filed a declaratory judgment action against the News seeking a declaration that the requested documents were not public information subject to disclosure under the Act. The News counterclaimed against the City and the city manager in his official capacity, seeking a writ of mandamus requiring the City to disclose the requested documents. The News also sought attorney's fees. The City eventually released three documents responsive to the News's request but refused to release the memorandum at issue in this case.

The City moved for summary judgment on its declaratory judgment action. The City claimed that the memorandum was not public information under the Act because it was merely a draft memorandum and, thus, was not used in transacting official business. The City argued, in the alternative, that if the memorandum was public information, the memorandum fell within the Act's agency memoranda exception to disclosure because it was part of the City's deliberative process about whether and how to terminate the finance director. *See* TEX. GOV'T CODE § 552.111. The News filed a cross-motion for summary judgment seeking a writ of mandamus ordering the City to disclose the memorandum. The News contended that the trial court did not have jurisdiction to entertain the City's declaratory judgment action. The News argued that the Act limits a governmental body's judicial remedies to a suit in Travis County district court against the Attorney General to challenge an opinion that the requested information is subject to disclosure. *See* TEX. GOV'T CODE § 552.353(b)(3). The News also argued that because the City had not requested an Attorney General opinion about whether the memorandum was subject to disclosure, the City had waived any exception from disclosure under the Act and had to make a "compelling demonstration" that the memorandum should be withheld. The News also sought attorney's fees in its summary judgment motion.

The trial court denied the City's motion and granted the News's motion, except on the News's attorney's fees claim. The court concluded that the City's failure to request an Attorney General opinion on whether the information was exempt precluded the City from filing a declaratory judgment action and resulted in an irrebuttable presumption that the information was public. The City requested a jury trial on the News's attorney's fees claim but the News objected to the request. The trial court denied the City's request for a jury trial, and after a bench trial on attorney's fees, awarded the News $45,184.64 in attorney's fees and costs.

The City and the News appealed. The court of appeals reversed the attorney's fees award and remanded the News's attorney's fees claim to the district court for a jury trial. 969 S.W.2d 548, 550. The court of appeals disagreed with the trial court about the consequences of the City's failure to request an Attorney General opinion, but affirmed the district court's judgment on the ground that the memorandum at issue was public information and that the memorandum did not fall under the Act's agency memoranda exception. 969 S.W.2d 548, 550. Both parties filed petitions for review in this Court.

## II. APPLICABLE LAW

### A. THE TEXAS PUBLIC INFORMATION ACT

In 1973, using the Federal Freedom of Information Act as a model, the Texas Legislature passed what is now known as the Texas Public Information Act. *See* 5 U.S.C. § 552; Acts 1973, 63rd Leg., p. 1112, ch. 424, §§ 1, 14(d); *see also Holmes v. Morales,* 924 S.W.2d 920, 925 (Tex.1996); *A & T Consultants, Inc. v. Sharp,* 904 S.W.2d 668, 676 (Tex.1995). The Legislature has amended the Act every session since 1973, but its purpose has remained the same—to provide public access "at all times to complete information about the

affairs of government and the official acts of public officials and employees." *See* Tex. Gov't Code § 552.001. The Act mandates a liberal construction to implement this policy and one favoring a request for information. *See* Tex. Gov't Code § 552.001; *see A & T Consultants,* 904 S.W.2d at 675; *see also Industrial Found. of the South v. Texas Indus. Acc. Bd.,* 540 S.W.2d 668, 682 (Tex.1976).

Upon a request for public information, a governmental body's officer for public records must promptly produce public information for inspection, duplication, or both. *See* Tex. Gov't Code § 552.221. The Act defines public information as any information which, "under a law or ordinance or in connection with the transaction of official business, is collected, assembled, or maintained by a governmental body; or for a governmental body and the governmental body owns the information or has a right of access to it." Tex. Gov't Code § 552.021. The Act also provides specific categories of public information, including "a completed report, audit, evaluation, or investigation made of, for, or by a governmental body." *See* Tex. Gov't Code § 552.022. But information is not subject to required disclosure if the Act specifically excepts it from required disclosure. *See* Tex. Gov't Code § 552.101–.123; *City of Houston v. Houston Chronicle Publ'g Co.,* 673 S.W.2d 316, 323 (Tex.App.—Houston [1st Dist.] 1984, no writ); *see also* Tex. Att'y Gen. ORD–197 (1978).

If a governmental body considers the requested information exempt from disclosure, and there has been no previous determination on the subject, the Act requires the governmental body to submit to the Attorney General written statements about why the information should be withheld and request an opinion from the Attorney General not later than the tenth day after receiving the request. *See* Tex. Gov't Code § 552.301; *City of Houston,* 673 S.W.2d at 323. If the governmental body does not timely request an Attorney General opinion, the information is pre-sumed public. *See* Tex. Gov't Code § 552.302. If the Attorney General rules that the Act does not exempt the information from required disclosure, the public officer or his agent must make it available to the requesting party or seek a judicial determination that the information does not have to be disclosed.

In addition, a person requesting information or the Attorney General may seek mandamus compelling a governmental body to make information available for public inspection if the governmental body refuses to request an Attorney General opinion or refuses to supply public information or information that the Attorney General has determined is public. *See* Tex. Gov't Code § 552.321. In actions brought under sections 552.321, the Act allows a court to assess costs of litigation and reasonable attorney's fees incurred by a plaintiff or defendant who substantially prevails. *See* Tex. Gov't Code § 552.323(a). In exercising this discretion, the court must consider whether the governmental body's conduct had a reasonable basis in law and whether the litigation was brought in good faith. *See* Tex. Gov't Code § 552.323(b).

### B. Standard of Review

Because the parties do not dispute the relevant facts, this is a proper case for summary judgment. *See Gaines v. Hamman,* 163 Tex. 618, 358 S.W.2d 557, 563 (1962). On cross-motions for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law. *See Guynes v. Galveston County,* 861 S.W.2d 861, 862 (Tex. 1993). When the trial court grants one motion and denies the other, the reviewing court should determine all questions presented. *See Commissioners Court of Titus County v. Agan,* 940 S.W.2d 77, 81 (Tex.1997); *Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex.1988). The reviewing court should render the judgment that the trial court should have rendered. *See Agan,* 940 S.W.2d at 81; *Members Mut. Ins. Co.*

*v. Hermann Hosp.*, 664 S.W.2d 325, 328 (Tex.1984).

■ In general, matters of statutory construction are legal questions. *See Johnson v. City of Fort Worth*, 774 S.W.2d 653, 656 (Tex.1989). Specifically, whether information is subject to the Act and whether an exception to disclosure applies to the information are questions of law. *See A & T Consultants*, 904 S.W.2d at 674. Subject matter jurisdiction is also a question of law. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998).

## III. ANALYSIS

### A. DECLARATORY JUDGMENT ACTION

■ The initial issue we must determine is whether the trial court had jurisdiction to entertain the City's declaratory judgment action against the News. The News argues that while the Act expressly entitles a requestor to sue a governmental body and a governmental body to sue the Attorney General in Travis County district court, the Act does not provide for a governmental body to sue a requestor. *See* TEX. GOV'T CODE §§ 552.321, 552.353(b)(3).[2] The News argues that, therefore, a governmental body's only available judicial remedy is to file for declaratory judgment or mandamus against the Attorney General, seeking relief from compliance with an Attorney General opinion that the requested information is subject to disclosure. *See* TEX. GOV'T CODE § 552.353(b)(3). Because the City did not request an Attorney General opinion, the News argues, the City has no available judicial remedy.

The City argues that it is entitled to bring a declaratory judgment action to determine its rights and liabilities under the Act. *See* TEX. CIV. PRAC. & REM.CODE §§ 37.001–.011. The City argues that sec-

tion 552.353(b)(3) of the Act merely provides an affirmative defense to a criminal action against a public official who refuses to produce documents and does not restrict a governmental body's judicial remedies. *See* TEX. GOV'T CODE § 552.353(b)(3). We agree with the City.

The Declaratory Judgments Act gives courts the power to declare rights, status and other legal relations, whether further relief is claimed or could be claimed. *See* TEX. CIV. PRAC. & REM.CODE § 37.003(a). While the Public Information Act does not expressly recognize a governmental body's right to bring a declaratory judgment action, it does not expressly prohibit a governmental body from bringing a declaratory judgment action. Indeed, both requestors and governmental bodies have brought declaratory judgment actions in open records cases since the Act's inception.

Persons seeking information under the Act have sued for declaratory judgment rather than mandamus. *See City of San Antonio v. Texas Att'y Gen.*, 851 S.W.2d 946, 947 (Tex.App.—Austin 1993, writ denied); *City of Abilene v. Shackelford*, 572 S.W.2d 742, 743 (Tex.Civ.App.—Eastland 1978), *rev'd on other grounds*, 585 S.W.2d 665 (Tex.1979); *Houston Chronicle Publ'g Co. v. City of Houston*, 531 S.W.2d 177, 181 (Tex.Civ.App.—Houston [14th Dist.] 1975), *writ ref'd n.r.e.*, 536 S.W.2d 559 (Tex.1976). Others have sued for declaratory judgment in addition to mandamus. *See Southern Methodist Univ. v. Times Herald Printing Co.*, 729 S.W.2d 129 (Tex. App.—Dallas 1987, no writ); *Calvert v. Employees Retirement Sys.*, 648 S.W.2d 418 (Tex.App.—Austin 1983, writ ref'd n.r.e.). And, governmental bodies have sued for declaratory judgment against requestors. *See Holmes*, 924 S.W.2d at 921; *Lett v. Klein Indep. Sch. Dist.*, 917

---

**2.** Section 552.353 provides that a public officer is subject to criminal penalties if he fails to give access to public information unless the public officer reasonably believed that public access to the information was not required and has filed a petition for declaratory judg-

ment, a writ of mandamus, or both, against an Attorney General in a Travis County district court seeking relief from compliance with the Attorney General decision. *See* TEX. GOV'T CODE § 552.353.

S.W.2d 455, 457 (Tex.App.—Houston [14th Dist.] 1996), *writ denied per curiam,* 978 S.W.2d 120 (Tex.1998); *Houston Indep. Sch. Dist. v. Houston Chronicle Publ'g Co.,* 798 S.W.2d 580, 582 (Tex.App.—Houston [1st Dist.] 1990, writ denied); *see also Blankenship v. Brazos Higher Educ. Auth. Inc.,* 975 S.W.2d 353, 356 (Tex. App.—Waco 1998, pet. denied) (plaintiff suing for declaration that it was not governmental body subject to the Act).

■ The News argues that to allow governmental bodies to sue requestors contravenes the Act's policy of affording the public prompt access to governmental information. But to hold that the Act, as it existed in 1993, prohibited governmental bodies from bringing declaratory actions would necessitate a strained reading of the Act. Courts are not responsible for omissions in legislation, but must take statutes as they find them. *See Holmes,* 924 S.W.2d at 925. Further, in 1995 the Legislature amended the Act to expressly prohibit a governmental body from suing a requestor, apparently in response to policy arguments identical to those the News makes here.[3] *See* Act of May 29, 1995, 74th Leg., R.S. (effective Sept. 1, 1995); SENATE COMMITTEE ON STATE AFFAIRS, BILL ANALYSIS, TEX. CSHB 1718, 74th Leg., R.S. (1995) ("The requestor of a public record should never have to defend such a suit."); SENATE COMMITTEE ON JURISPRUDENCE, BILL ANALYSIS, Tex. S.B. 636, 74th Leg., R.S. (1995) ("The possibility of being sued as a result of making an open records request may limit the number of future requests."). The 1995 amendment, which became effective on September 1, 1995, bolsters the City's argument that the Act, as it existed in 1993, did not prevent the City from seeking a declaratory judgment against the News. Therefore, we conclude that the City was entitled to bring a declaratory judgment action against the News.

**3.** Legislative history indicates that the amendment was in response to *Lett,* 917 S.W.2d at 457, in which a school district brought a declaratory judgment action against the parent of a student who sought information from

## B. INFORMATION SUBJECT TO THE ACT

■ The City argues that the memorandum is not subject to the Act. The City asserts that the city manager drafted the memorandum purporting to terminate the city finance director but never finalized or sent the memorandum to the finance director. Therefore, the City argues, the memorandum was just a draft and is not public information under section 552.022 of the Act. The City also argues that the memorandum was not used in connection with transacting official business and, therefore, is not public information under section 552.021. But the City concedes that the city manager prepared the memorandum to circulate to the city council in order to consult with them about the city finance director. The City further explains that, after consultation, the city manager decided not to pursue the strategy outlined in the memorandum and, thus, did not finalize the memorandum to send to the finance director. The News argues that the Act does not require that documents be final to be public information and that the city manager's own affidavit proves that the memorandum was used in transacting official business. We agree with the News that the memorandum is public under the Act.

■ Under the Act, public information is any information which, "under a law or ordinance or in connection with the transaction official business, is collected, assembled, or maintained by a governmental body; or for a governmental body and the governmental body owns the information or has a right of access to it." TEX. GOV'T CODE § 552.021. Section 552.022, "[w]ithout limiting the meaning of other sections of [chapter 552]," provides specific categories of public information. TEX. GOV'T CODE § 552.022. These categories in-

the school district. *See* SENATE COMMITTEE ON STATE AFFAIRS, BILL ANALYSIS, TEX. CSHB 1718, 74th Leg., R.S. (1995) (referring to the procedural history of the *Lett* case).

clude "a completed report, audit, evaluation, or investigation." *See* Tex. Gov't Code § 552.022. But section 552.022 emphasizes that its categories do not limit the meaning of the Act's other sections. *See* Tex. Gov't Code § 552.022. Therefore, section 552.022's categories do not limit section 552.021's broad definition of public information. *See* Tex. Gov't Code §§ 552.021, 552.022. Accordingly, we hold that a document, even if labeled "draft," is public information if, under a law or ordinance or in connection with the transaction of official business, it is collected, assembled, or maintained by or for a governmental body. *See* Tex. Gov't Code § 552.021. It follows that a draft document that is not collected, assembled, or maintained by or for a governmental body under a law or ordinance or in connection with transacting official business is not public information. For example, the mere creation of a draft is not transacting official business. But if the draft document is used in connection with transacting official business, then the draft document becomes public information. To allow a governmental body to exempt otherwise public documents from the Act simply by labeling or calling them "drafts" would invite governmental bodies to circumvent the Act's purpose of broad public access to governmental information. *See* Tex. Gov't Code § 552.001.

The City does not argue that it did not collect, assemble, or maintain the memorandum. The City argues that because the memorandum was never finalized and sent to the finance director, it was a mere draft that was not used in transacting official business, and therefore, is not public under the Act. This argument is without merit. By the City's own admission, the city manager and city council used the memorandum in connection with transacting official business. The city manager's affidavit states, in part:

> I drafted the document with the intention of providing it to the Garland City Council in a closed executive session, and to the City Attorney, for the pur-

pose of discussing it with them to obtain their advice, opinion and recommendation on both the language to be used, as well as whether to pursue the strategy where the document would be used at all. The document was prepared by me to elicit the advice and input of the City Council and me in my decision on how to resolve the employment matter.... Following the deliberations between the Garland City Council and myself, and Garland City Attorney and myself, I determined not to resolve the employment matter in the manner where use of document might have been necessary to put the document in final form, nor did I authenticate it by signing or sending it to its contemplated addressee.

Despite the fact that the City now calls the memorandum a draft and that the city manager addressed the memorandum to the finance director, the city manager concedes that he prepared the memorandum to circulate to the city council and then used it to consult with them about the City's personnel problem with the finance director. The memorandum became public information under the Act when the city manager and the city council used it in deciding how to handle the problem with the finance director, a decision involving the City's official business. *See* Tex. Gov't Code § 552.021. Accordingly, we conclude that the memorandum is public information under section 552.021.

## C. The Deliberative Process Privilege

 Having determined that the memorandum here is public information under the Act, we now consider whether the memorandum is exempt from required disclosure. The City argues only that the memorandum is exempt from disclosure under section 552.111, the agency memoranda exception. *See* Tex. Gov't Code § 552.111. The City does not assert any other exception. *See* Tex. Gov't Code § 552.101–.123. Section 552.111 exempts documents that would not be available to those in litigation with an agency. *See* Tex. Gov't Code § 552.111. The City con-

tends that section 552.111 incorporates the deliberative process privilege, which protects the memorandum from disclosure because the memorandum is predecisional and, although it does not reflect deliberations on its face, it was used in the deliberative process. The City also asserts that the court of appeals erred in holding that the privilege does not protect the memorandum on the ground that the memorandum was not used in the City's policymaking process.

The News argues that there is no deliberative process privilege in Texas. In the alternative, the News argues that the court of appeals correctly refused to apply the deliberative process privilege to the memorandum because the privilege protects only documents reflecting policy formulation and that the memorandum at issue deals with a mere personnel matter. Whether the deliberative process privilege exists in Texas and, if it does, the privilege's scope, are issues of first impression for this Court.

Section 552.111 exempts from disclosure "[a]n interagency or intraagency memorandum or letter that would not be available by law to a party in litigation with the agency." TEX. GOV'T CODE § 552.111. Texas courts and the Attorney General have consistently recognized that this exception encompasses the common law deliberative process privilege, which protects certain agency communications from discovery.[4] *See Lett,* 917 S.W.2d at 456; *Texas Dep't of Pub. Safety v. Gilbreath,* 842 S.W.2d 408, 412–13 (Tex.App.—Austin 1992, no writ); *Austin v. City of San Antonio,* 630 S.W.2d 391, 394 (Tex.App.—San Antonio 1982, writ ref'd n.r.e.); Tex. Att'y Gen. ORD–631 (1995); Tex. Att'y Gen. ORD–626 (1994); Tex. Att'y Gen. ORD–615 (1993).

As already noted, the Legislature modeled the Act on the FOIA. *See Holmes,* 924 S.W.2d at 925; *A & T Consultants,* 904 S.W.2d at 676; *Gilbreath,* 842 S.W.2d at 412. Indeed, section 552.111's language is almost identical to the FOIA's agency memoranda exception. *See* 5 U.S.C. § 552(b)(5)(exempting "inter-agency or intra-agency memorandum or letters which would not be available by law to a party other than an agency in litigation with the agency"). Federal courts have consistently held that the FOIA's agency memorandum exception includes the deliberative process privilege, as well as the attorney work-product and attorney-client privileges.[5] *See National Labor Relations Bd. v. Sears, Roebuck & Co.,* 421 U.S. 132, 150, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975); *Coastal States Gas Corp. v. Department of Energy,* 617 F.2d 854, 862 (D.C.Cir.1980). When the Legislature adopts a federal statute, we presume that it knew of the federal court's construction of the federal statute when it adopted the statute and intended to adopt that construction. *See Blackmon v. Hansen,* 140 Tex. 536, 169 S.W.2d 962, 964–65 (1943). Therefore, we hold that section 552.111 of the Act incorporates the deliberative process privilege.

The next issue we consider is whether the deliberative process privilege is properly limited to communications that reflect policymaking. In determining this issue, we again look to federal case law for guidance. *See Blackmon,* 169 S.W.2d at 964–65. A few months before the Texas Legislature enacted the predecessor to the Public Information Act, the Open Records Act, the United States Supreme Court explained the purpose and scope of the

---

4. The Texas Attorney General has recognized that section 552.111 also encompasses an attorney work-product privilege for work-product related to litigation that has ceased. *See* Tex. Att'y Gen. ORD–647 (1996).

5. Section 552.101 of the Texas Public Information Act exempts information considered confidential by law, including information falling under the attorney-client privilege. *See* TEX. GOV'T CODE § 552.101. Section 552.103 of the Act, which exempts information about litigation or settlement negotiations involving a governmental entity, incorporates the attorney work-product privilege. *See* TEX. GOV'T CODE § 552.103.

FOIA's agency memoranda exception. *See Environmental Protection Agency v. Mink*, 410 U.S. 73, 85–91, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973). The Court explained that the FOIA's agency memorandum exception, which exempts agency communications falling under the attorney work-product and attorney-client privileges in addition to the deliberative process privilege, was designed to promote " 'frank discussion of legal and policy matters.' " *Mink*, 410 U.S. at 87, 93 S.Ct. 827 (quoting S. REP. No. 813, 89th Cong., 1st Sess. 9 (1965)). The Court noted that, in enacting the agency memoranda exception, Congress recognized that the "efficiency of Government would be greatly hampered if, with respect to legal and policy matters, all Government agencies were prematurely forced to 'operate in a fishbowl.' " *Mink*, 410 U.S. at 87, 93 S.Ct. 827 (quoting S. REP. No. 813, 89th Cong., 1st Sess. 9 (1965)). Nevertheless, because of the FOIA's strong policy favoring disclosure, Congress intended that the agency memorandum exception be construed "as narrowly as consistent with efficient Government operation." *Mink*, 410 U.S. at 87, 93 S.Ct. 827 (quoting S. REP. No. 813, 89th Cong., 1st Sess. 9 (1965)); *see also Coastal States*, 617 F.2d at 868.

Two years later, the Court reiterated that the agency memorandum exception, properly construed, exempts " 'all papers which reflect the agency's group thinking in the process of working out its policy and determining what its law shall be' " *Sears*, 421 U.S. at 153, 95 S.Ct. 1504 (quoting Davis, *The Information Act: A Preliminary Analysis*, 34 U. CHI. L.REV. 761, 797 (1967)). Thus, when the Texas Legislature enacted the Public Information Act, including the agency memorandum exception, the United States Supreme Court had described the FOIA's agency memorandum exception as including the attorney work-product and attorney-client privileges to protect communications about legal matters and a deliberative process privilege to protect communications about policy matters.

The City correctly recognizes that the deliberative process privilege covers only communications that are predecisional and deliberative. *See Sears*, 421 U.S. at 151–52, 95 S.Ct. 1504; *Mink*, 410 U.S. at 87–91, 93 S.Ct. 827; *Ethyl Corp. v. United States E.P.A.*, 25 F.3d 1241, 1248 (4th Cir.1994); *Petroleum Info. Corp. v. United States Dep't of Interior*, 976 F.2d 1429, 1434 (D.C.Cir.1992); *Soucie v. David*, 448 F.2d 1067, 1077 (D.C.Cir.1971). Predecisional documents are those "prepared in order to assist an agency decisionmaker in arriving at his decision." *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184, 95 S.Ct. 1491, 44 L.Ed.2d 57 (1975). Deliberative documents reflect the "the give-and-take of the consultative process." *Coastal States*, 617 F.2d at 866. But the City insists that these are the *only* two conditions of applying the privilege. In support of its argument, the City cites cases that do not expressly limit the privilege to policy matters, but apply the privilege to documents because the documents are predecisional and deliberative. *See Sears*, 421 U.S. at 150, 95 S.Ct. 1504; *City of Virginia Beach v. United States Dep't of Commerce*, 995 F.2d 1247, 1253 (4th Cir. 1993); *National Wildlife Fed'n v. United States Forest Serv.*, 861 F.2d 1114, 1121; *Schell v. United States Dep't of Health & Human Servs.*, 843 F.2d 933, 942 (6th Cir.1988); *Dudman Communications Corp. v. Department of the Air Force*, 815 F.2d 1565, 1569 (D.C.Cir.1987); *May v. Department of the Air Force*, 777 F.2d 1012, 1014–15 (5th Cir.1985); *Russell v. Department of the Air Force*, 682 F.2d 1045, 1048–49 (D.C.Cir.1982); *Arthur Andersen v. Internal Revenue Serv.*, 679 F.2d 254, 257 (D.C.Cir.1982); *Coastal States*, 617 F.2d at 866; *Wu v. National Endowment for the Humanities*, 460 F.2d 1030, 1034 (5th Cir.1972); *Soucie*, 448 F.2d at 1077.

But none of the cases the City cites consider the issue here—whether the privilege protects only policymaking com-

munications. Rather, most of these cases concern whether the communications are predecisional and deliberative. *See Sears,* 421 U.S. at 155, 95 S.Ct. 1504 (determining that National Relations Labor Board's decisions to issue a complaint, as opposed to decisions not to issue a complaint, were predecisional); *City of Virginia Beach,* 995 F.2d at 1254–55 (deciding that agency documents about a city's request for a water pipeline permit were predecisional); *May,* 777 F.2d at 1015 (deciding that Air Force Lieutenant Colonel promotion recommendation reports were predecisional and deliberative); *Russell,* 682 F.2d at 1048–49 (determining that a draft historical document on herbicide use during the Vietnam War was part of the deliberative process); *Coastal States,* 617 F.2d at 866–68 (determining that memoranda from Department of Energy regional counsel to auditors interpreting regulations within the context of particular audit were not predecisional).

Moreover, many of these same opinions contain language emphasizing that the purpose of the FOIA agency memoranda exception is to protect agency decision-making *on legal and policy matters. See National Wildlife Fed'n,* 861 F.2d at 1117 (noting that deliberations must be actually related to the process by which policies are formulated); *Dudman,* 815 F.2d at 1567–68 (defining deliberative material as consisting primarily of governmental officials' opinions and recommendations on matters of executive policy); *May,* 777 F.2d at

1014 ("purpose of the privilege is to protect the decisionmaking process from the inhibiting effect that disclosure of predecisional advisory opinions and recommendations might have on the 'frank discussion of legal or policy matters' in writing' ") (quoting *Sears,* 421 U.S. at 150, 95 S.Ct. 1504); *Coastal States,* 617 F.2d at 869 (concluding that documents were not excepted partially on ground that documents did not "discuss the wisdom or merits of a particular agency policy, or recommend new agency policy"); *Soucie,* 448 F.2d at 1078 (stating that the privilege is designed to protect "internal policy deliberations").[6]

The agency memorandum exception is potentially the most far-reaching exception in the FOIA. *See Note, The Freedom of Information Act and the Exception for Intra–Agency Memoranda* 86 Harv. L.Rev. 1047, 1048 (1973).[7] There is an "inevitable temptation" on the part of governmental litigants to interpret the exception as expansively as necessary to apply it to the particular records it seeks to withhold. *See Soucie,* 448 F.2d at 1078; *Ackerly v. Ley,* 420 F.2d 1336, 1341 (D.C.Cir. 1969). Indeed, since Congress amended the FOIA to exempt privileged agency memoranda, federal courts have applied the deliberative process privilege to an increasingly broader range of agency communications, including arguably nonpolicy communications. *See* Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Evidence § 5680 (1992); *see*

---

**6.** *See also Texaco Puerto Rico v. Department of Consumer Affairs,* 60 F.3d 867, 884 (1st Cir. 1995) ("A document must be . . . actually related to the process by which policies are formulated."); *Ethyl,* 25 F.3d at 1248 ("[T]he privilege does not protect a document which is merely peripheral to actual policy formulation; the record must bear on the formulation or exercise of policy-oriented judgment."); *Hopkins v. United States Dept. of Housing and Urban Dev.,* 929 F.2d 81, 84 (2nd Cir.1991) (holding that the exception covers documents " 'actually . . . related to the process by which policies are formulated' ") (quoting *Jordan v. United States Dep't Justice,* 591 F.2d 753, 774 (D.C.Cir.1978) (en banc)); *Paisley v. CIA,* 712 F.2d 686, 698–99 (D.C.Cir.1983) (holding that

under the privilege, communications must contain "opinions, recommendations, or advice about agency policies"), *vacated in part on other grounds,* 724 F.2d 201 (D.C.Cir. 1984).

**7.** According to a Congressional study, the agency memoranda exception was second only to the trade secret and commercial information exception as the most frequent ground for refusing to disclose information under the FOIA during its first four years. *See Freedom of Information Act Amendments Sourcebook, House Government Operations Committee and Senate Judiciary Committee,* 94th Cong., 1st Sess., 1975, p. 104–105.

*also, e.g., Russell,* 682 F.2d at 1048 (determining that a draft historical document on herbicide use during the Vietnam War was part of a deliberative process, and therefore, protected from disclosure). As we noted earlier, however, none of these cases answer the argument that a correct interpretation of the privilege is one that covers only policymaking communications.

The D.C. Circuit, which has delivered more FOIA decisions than any other circuit,[8] recently emphasized what the United States Supreme Court had made clear twenty years before—that the privilege's scope is properly limited to policymaking deliberations. In *Petroleum Information Corporation,* a 1992 case, Justice Ginsburg recognized that the D.C. Circuit's decisions in the late 1980s and early 1990s on the "deliberativeness" inquiry had focused on "whether disclosure of the requested material would tend to 'discourage candid discussion within an agency.'" *Petroleum Info. Corp.,* 976 F.2d at 1434 (quoting *Access Reports v. Department of Justice,* 926 F.2d 1192, 1195 (D.C.Cir.1991)), and *Dudman,* 815 F.2d at 1567–68)); *see also* Seal, Commentary, 71 Denv. U.L.Rev. at 725 (discussing the D.C. Circuit's increasingly broad definition of deliberativeness in the mid–1980s). But, against this backdrop, Justice Ginsburg underscored that the deliberative process privilege is centrally concerned with protecting the process by which *policy* is formulated. *See Petroleum Info. Corp.,* 976 F.2d at 1435. She explained:

> Honing in on, and sheltering material implicating officials' exercise of judgment about policy matters secures the internal agency "give-and-take" Congress meant to protect when it enacted Exception 5. *See Coastal States, 617 F.2d at 866. Our decisions recognize that the process of selecting among alternative policies* can be delicate and audience-sensitive, susceptible to distor-

tions and vulnerable to fudging when the deliberators fear or expect public reason. Inquiring whether the requested materials can reasonably be said to embody an agency's policy-informed or—informing judgmental process therefore helps us answer the "key question" in these cases: whether disclosure would tend to diminish candor within an agency.... [I]t [also] enables us to contain Exception 5 within its proper scope.

*Petroleum,* 976 F.2d at 1435–36 (emphasis added). The Fifth Circuit seems to agree that the privilege's subject matter is limited to policy formulation. *See Cazalas v. United States Dep't of Justice,* 709 F.2d 1051, 1055 (5th Cir.1983)(holding that because documents contained investigative facts forming the basis for a personnel decision and did not encompass policy assessments, they were not exempt under FOIA section 552(b)(5)).

In addition, the few Texas authorities on this issue have determined that the privilege covers only policymaking communications. The Fourteenth Court of Appeals held that documents prepared by school personnel pertaining to a student's performance at school were not exempt because they merely implemented existing policy and did not contribute to policy formulation. *See Lett,* 917 S.W.2d at 457. The Attorney General ruled that documents relied upon by the Department of Public Safety in deciding not to promote an individual were not exempt because they were internal administrative or personnel matters that did not involve the Department's policymaking function. *See* Tex. Att'y Gen. ORD–626 (1994). In contrast, the Attorney General ruled that section 552.111 excepted from disclosure a report that a university had solicited about the university's alleged systemic racial discrimination against faculty members. *See* Tex. Att'y Gen. ORD–631 (1995). The Attorney General reasoned that the report

---

8. *See* Seal, Commentary, *The Future of the Freedom of Information Act's Deliberative Process Exception and Disclosure of Computerized* *Federal Records after Petroleum Info. Corp. v. United States Dep't of Interior,* 71 Denv. U.L.Rev. 719, 724, n. 59 (1994).

not only discussed personnel matters but related to the university's policies concerning affirmative action and its educational mission. *See* Tex. Att'y Gen. ORD–631 (1995).

We recognize that public disclosure of agency communications reflecting deliberative processes on any subject, even nonpolicy communications, could have a chilling effect on agency employees' communications in the future. But the exception's purpose is not to prevent all disclosures that would chill all frank and open discussions. Its purpose has always been to promote the "frank discussion of . . . policy matters." *Mink,* 410 U.S. at 87, 93 S.Ct. 827. Disclosure of information not related to policy matters will not inhibit free discussion among agency personnel about policy matters. *See* Tex. Att'y Gen. ORD–615 (1993).

Further, interpreting the deliberative process privilege to exempt any information as long as it is predecisional and deliberative would exempt all agency information except postdecisional or purely factual information. Such an interpretation would allow the exception to swallow the Act. Thus, we cannot interpret the exception so broadly. Unlike the FOIA, our Act contains a strong statement of public policy favoring public access to governmental information and a statutory mandate to construe the Act to implement that policy and to construe it in favor of granting a request for information. *See* TEX. GOV'T CODE § 552.001.

■ Therefore, we hold that the deliberative process privilege, as incorporated in the agency memoranda exception, protects only those agency communications or parts of agency communications that relate to the agency's policymaking. We recognize that certain personnel communica-

tions or parts of those communications may contain policymaking deliberations and that the deliberative process privilege would protect these deliberations. But because the memorandum here does not bear upon policymaking but merely expresses reasons to terminate the city finance director, we conclude that section 552.111 does not exempt it from disclosure.

The News, and the Attorney General as amicus curiae, contend that because the City did not request an Attorney General decision under section 552.301 about whether the requested information was subject to disclosure, the City could not simply rely upon a statutory exception to disclosure. *See* TEX. GOV'T CODE §§ 552.301, 552.302. Instead, they argue, the City was required to make a "compelling demonstration" that the memorandum was not subject to public disclosure. The City argues that the Act's plain language does not support a compelling-demonstration requirement but merely imposes a presumption, shifting the burden of production to the governmental body on whether the requested information can be withheld. *See* TEX. GOV'T CODE § 552.302. The court of appeals agreed with the City. Because we determine that the City did not meet its burden to prove that the memorandum is not subject to the Act or falls within one of the Act's exceptions to public disclosure, we need not decide whether the City must go beyond that to make a compelling demonstration that the information is not subject to public disclosure.[9]

## IV. THE DISSENT

■ The dissent seems to agree that the deliberative process privilege as incorporated into the Act's agency memoranda exception is properly limited by a policy requirement. But the dissent asserts that

9. We note that the Legislature recently amended the Act to require a governmental body that does not request an Attorney General decision, except when there has been a previous determination on the issue, to provide a "compelling reason" to justify with-

holding the information. *See* Act of May 27, 1999, 76th Leg., R.S., S.B. 1851 § 21 (to be codified at TEX. GOV'T CODE § 552.302.) The amendment's effective date is September 1, 1999.

the privilege protects all predecisional and deliberative agency memoranda involving personnel decisions because such decisions necessarily involve policy. We disagree.

To hold as the dissent would, that documents are exempt from public access because they somehow involve policy, is the same as holding that there is no policy requirement at all. This is because every decision an agency makes arguably involves a policy. Thus, every document reflecting predecisional and deliberative communications, regardless of its policy implications, would be exempt from public access. Drawing the line where the dissent draws it is drawing no line at all. Instead, we hold that the deliberative process privilege as incorporated in the agency memoranda exception protects only those documents involved in policy *formulation*.

The dissent cites federal cases as support for its proposition that the privilege covers documents used in personnel deliberations and other federal cases that apply the privilege to documents that do not relate to policymaking. But we have already acknowledged most of these cases and explained that they do not answer the issue we decide today—whether the deliberative process privilege is properly limited to agency communications reflecting policy formulation. Rather, these cases focus on whether the document at issue is predecisional and deliberative. *See, e.g., May,* 777 F.2d at 1015 (deciding that Air Force Lieutenant Colonel promotion recommendation reports were predecisional and deliberative); *Russell,* 682 F.2d at 1048 (determining that a draft historical document on herbicide use during the Vietnam War was part of a deliberative process, and therefore, protected from disclosure). We do acknowledge that *American Fed'n of Gov't Employees v. United States Dep't of Commerce,* that the dissent cites, held that personnel forms that did not reflect deliberations on policy options were exempt from disclosure under the deliber-

ative process privilege. *See AFGE,* 907 F.2d 203, 207 (D.C.Cir.1990).

Nevertheless, the scope of the agency memoranda exception in Texas is a case of first impression in this Court. Thus, we are not wedded to any particular interpretation of the privilege. And, again, when the Texas Legislature adopts a federal statute, we presume that it knew of the federal courts' construction of the federal statute *when it adopted the statute* and intended to adopt *that* construction. *See Blackmon,* 169 S.W.2d at 964–65. When the Legislature enacted the Texas Public Information Act in 1973, the U.S. Supreme Court had just issued *Mink,* in which it explained that the FOIA's agency memoranda exception was designed to promote the frank discussion of legal and policy matters. *See Mink,* 410 U.S. at 87, 93 S.Ct. 827. The Court also noted that Congress intended that the exception be construed "as narrowly as consistent with efficient Government operation." *Mink,* 410 U.S. at 87, 93 S.Ct. 827. The dissent also relies on *Mink* but misconstrues it. The dissent correctly notes that the previous version of the FOIA's agency memoranda exception was criticized because it would permit compelled disclosure of an otherwise private document simply because the document did not deal "solely" with legal or policy matters. *See Mink,* 410 U.S. at 90, 93 S.Ct. 827. But the *Mink* court explained that the criticism was directed at the problem of "disclosure of . . . policy recommendations simply because the documents containing them also happened to contain factual data." *See Mink,* 410 U.S. at 90, 93 S.Ct. 827 ("Documents dealing with mixed questions of fact, law, and policy would inevitably, under the proposed exemption, become available to the public.").

Further, earlier interpretations of the deliberative process privilege limited it to documents reflecting policymaking. In 1967, Professor Davis noted that a proper construction of the exception called for "disclosure of all opinions and interpreta-

tions which embody the agency's effective law and policy, and the withholding of all papers which reflect the agency's group thinking in the process of *working out its policy and determining what its law shall be.*" Davis, *The Information Act: A Preliminary Analysis,* 34 U. Chi. L.Rev. 761, 797 (1967) (emphasis added), quoted in *Sears,* 421 U.S. at 153, 95 S.Ct. 1504; *see also Soucie,* 448 F.2d at 1078 (privilege designed to protect internal policy deliberations); *Bristol–Myers Co. v. F.T.C.,* 424 F.2d 935, 939 (D.C.Cir.1970) (exception designed to protect only those internal working papers in which opinions are expressed and policies formulated and recommended).

Therefore, the fact that federal courts later applied the exception to drafts of the history of herbicide use in the Vietnam War or to evaluations and recommendations about Air Force personnel is of little value to our analysis. *See Russell,* 682 F.2d at 1048–49; *May,* 777 F.2d at 1015. Federal courts have applied the deliberative process privilege to an increasingly broader range of agency communications. *See* Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure: Evidence § 5680 (1992); *see also* Seal, Commentary, *The Future of the Freedom of Information Act's Deliberative Process Exception and Disclosure of Computerized Federal Records after Petroleum Info. Corp. v. United States Dept. of Interior,* 71 Denv. U.L.Rev. 719, 725 (discussing the D.C. Circuit's increasingly broad definition of deliberativeness in the mid–1980s). Wright and Miller explain:

> Under the instrumental rationale for the privilege, the 'paradigm document' to be protected would be a memorandum containing an exhaustive examination of alternatives in a particular policy area prepared for a high agency official at the final stages of an agency's deliberations. But cases under the [FOIA] have extended the privilege to budget requests, presentence reports to federal judges, summaries of the testimony of witnesses

at a public hearing, I.R.S. secret policies and efforts to cover-up political interventions by members of Congress in the problems of individual taxpayers, and routine application of agency policy.

*See* Wright and Miller, § 5680 at 133.

The increasing scope of the deliberative process privilege in federal courts is in itself a reason to not follow post–1973 federal court cases. Our Public Information Act mandates that we liberally construe it to further the policy of providing public access "to complete information about the affairs of government and the official acts of public officials and employees." Tex. Gov't Code § 552.001. It also mandates a construction favoring a request for information. *See* Tex. Gov't Code § 552.001; *A & T Consultants,* 904 S.W.2d at 676. Given the Legislature's mandate, we should not blindly follow the federal courts in their expansion of the privilege.

In sum, despite the federal cases that exempt non-policymaking documents, our holding that the deliberative process privilege does not cover every document containing personnel deliberations but covers only those reflecting policymaking deliberations is the most consistent with the Legislature's intent and the Public Information Act's purpose. Further, since the early 1990s, the Texas Attorney General has interpreted the deliberative process privilege to except only documents involving policymaking, and although the Legislature has amended the Act each session since then, the Legislature has never responded negatively to the Attorney General's interpretation of the privilege. *See* Tex. Att'y Gen. ORD–615 (1993).

■ The dissent also relies on the Texas Open Meetings Act as support for its view of the Public Information Act's agency memoranda exception. The dissent reasons that because the Open Meetings Act expressly allows governmental bodies to discuss certain personnel matters in closed meetings, the Public Information Act must impliedly exempt from public access documents involving the same mat-

ters. *See* TEX. GOV'T CODE § 551.074. We disagree. That a matter can be discussed in closed meetings does not mean that all documents involving the same matter are exempt from public access. Otherwise, any document, regardless of its content and regardless of whether it would be otherwise available to the public under the Public Information Act, would be exempt from disclosure just because it could be considered in a closed meeting. *See* Tex. Att'y Gen. ORD–485 (1987). The dissent's heavy reliance on the Open Meetings Act effectively writes out the Public Information Act's provisions and ignores its purpose to provide the public "at all times to complete information about the affairs of government and the official acts of public officials and employees." TEX. GOV'T CODE § 552.001.

## V. ATTORNEY'S FEES

 Finally, the News argues that the court of appeals erred in remanding the amount of attorney's fees to the trial court for a jury trial. The News contends that under the Act's plain language, the trial judge, not a jury, determines the amount of attorney's fees. The Act provides:

(a) In an action brought under Section 552.321 [suit for writ of mandamus under the Act] . . ., the court may assess costs of litigation and reasonable attorney fees incurred by a plaintiff or defendant who substantially prevails.

(b) In exercising its discretion under this section, the court shall consider whether the conduct of the governmental body had a reasonable basis in law and whether the litigation was brought in good faith.

TEX. GOV'T CODE § 552.323.[10] According to the News, including the "court" language and omitting any provision for a jury determination evinces the Legislature's intent that section 552.323 requires

the trial judge to determine the amount of attorney's fees. We disagree.

 Subsection 552.323(a) provides that the court "may" assess attorney's fees. *See* TEX. GOV'T CODE § 552.323(a). Subsection 552.323(b) describes two factors that the court must consider in making this choice: the governmental body's conduct and whether the litigation was brought in good faith. *See* TEX. GOV'T CODE § 552.323(b). Thus, the trial judge decides whether to award attorney's fees under the Act. *See Morales v. Ellen*, 840 S.W.2d 519, 526 (Tex.App.—El Paso 1992, writ denied).

 But section 552.323 does not dictate how to determine the attorney's fees amount, except that the award must be "reasonable." *See* TEX. GOV'T CODE § 552.323(a). In general, the reasonableness of statutory attorney's fees is a jury question. *See Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex.1998); *see also Stewart Title Guar. Co. v. Aiello*, 941 S.W.2d 68, 73 (Tex.1997); *Great Am. Reserve Ins. Co. v. Britton*, 406 S.W.2d 901, 907 (Tex.1966).

This Court recently interpreted a similarly-worded provision in the Declaratory Judgments Act to allow a jury to determine the amount of attorney's fees. *See* TEX. CIV. PRAC. & REM. CODE § 37.009; *Bocquet*, 972 S.W.2d at 21. That Act provides, "the court may award costs and reasonable and necessary attorney's fees as are equitable and just." *See* TEX. CIV. PRAC. & REM. CODE § 37.009. We held that this language requires the trial court to determine whether to award attorney's fees and allows the jury to determine the amount of reasonable attorney's fees. *See Bocquet*, 972 S.W.2d at 21. Therefore, consistent with our interpretation· of a statute containing similar language and our past jurisprudence on this issue, we conclude that the amount of attorney's fees is a fact question for a jury to determine.

---

10. The Legislature recently amended section 552.323. *See* Act of May 27, 1999, S.B. 1851 § 29, 76th Leg., R.S. (to be codified at TEX. GOV'T CODE § 552.323). Because the changes are not effective until September 1, 1999, they do not affect our analysis here.

The News also argues that it is more cost-efficient to require the trial court to determine the amount of fees. But we cannot judicially amend section 552.323 to prohibit a jury trial on the attorney's fees amount. Accordingly, the court of appeals did not err·in remanding the attorney's fees issue for a jury determination.

## VI. CONCLUSION

 A majority of the Court concludes that: (1) the trial court had subject matter jurisdiction over the City's declaratory judgment action against the News; (2) the memorandum here was public information under the Act; (3) the Act's agency memoranda exception encompasses the deliberative process privilege but the exception does not exempt the memorandum from required disclosure; and (4) the Act entitles the City of Garland to a jury trial on the amount of attorney's fees. The plurality would hold that the deliberative process privilege is limited to protecting predecisional and deliberative documents that reflect policymaking and that the privilege does not apply to the memorandum because the memorandum does not reflect deliberations on policy. A majority of the Court affirms the court of appeals' judgment.

Justice ENOCH filed a concurring opinion, in which Chief Justice PHILLIPS and Justice ABBOTT joined.

Justice OWEN filed a dissenting opinion, in which Justice HECHT joined.

Justice ENOCH, joined by Chief Justice PHILLIPS and Justice ABBOTT, concurring.

While I join in the Court's judgment, I have reservations about the plurality's analysis of whether this memorandum is a public document and whether the examples provided by the legislature apply.

First, I would give more weight to the examples given by the legislature than the

plurality does in determining the scope of the Act. The plurality concludes that since the examples given in section 552.022 do not limit the meaning of other sections in the chapter, a draft document is public information. But in no other area of statutory interpretation would we conclude that the legislature has written a completely irrelevant list of examples into the statute. One of the examples of public information is "a completed report, audit, evaluation, or investigation." [1] In my opinion, this example draws a distinction between documents collected, maintained, or assembled by a governmental body and documents that a governmental body owns or has a right of access to. I would emphasize that to be public information, the memorandum generated by the city manager has to be completed. And in this case what makes it completed is that the city manager presented it to the city council for decision and it was used by the council in making a decision on the problem with the finance director. Consequently, the memorandum is public information.

Because I agree that the memorandum is public information, I must consider whether the exceptions apply. I join in the result of the plurality's analysis of whether the exceptions apply, but not in all of its writing.

I cannot join the dissent because it treats federal cases as controlling the Texas Open Records Act, even though the Act does not purport to conform to federal law and even though the federal cases did not exist at the time the Act was passed.

When state statutes are modeled on federal legislation, federal authority can be relevant to varying degrees. In some cases, federal law controls the interpretation of the state statute. These are cases in which either the state statute says that federal authority will control, or the feder-

---

1. Tex. Gov't Code § 552.022.

al authority says that it will control. Antitrust and Title VII cases are examples.[2]

When a state statute is modeled on federal legislation but makes no statement about the relevance of federal authority, courts may look to analogous federal authority, but there is no mandate that they do so.[3] This case is an example. We have previously observed that "the legislature enacted TORA to conform loosely to the federal Freedom of Information Act."[4] Unlike the first category of cases, the Act has no statement that federal authority is determinative in the issues before us. I cannot agree that federal cases decided subsequent to the statute's passage dictate how Texas courts are to resolve the Texas statute's continuing application. As I believe the federal cases read more broadly the law than I can read this statute, I am unpersuaded by their reasoning.

For these reasons, I concur in the judgment.

Justice OWEN, joined by Justice HECHT, dissenting.

The memo at issue in this case was prepared to facilitate a personnel decision by a city's management. The memo was used for no other purpose, and the City decided not to follow the course of action that the memo reflected. A majority of the Court holds that this memo does not fall within the deliberative process exemption. Because that conclusion is not supported by the Open Records Act or its companion, the Texas Open Meetings Act, and because the overwhelming weight of authority is contrary to the judgment handed down today, I respectfully dissent.

## I

Ron Holifield, the City of Garland's City Manager, drafted a memorandum addressed to James Hager, the City's director of finance, that stated that Holifield was removing Hager from his position. The memo then set forth "[e]xamples of the reasons for my [Holifield's] having such a loss of confidence to necessitate your removal." Holifield's affidavit in this case, which was uncontroverted, states that the memo was prepared with the intention of providing it to the Garland City Council in a closed executive session for the purpose of discussing it in order to determine whether to pursue a course of action consistent with the memo. The memo was never given to Hager because the City decided to pursue another course of action in dealing with its employee. The plurality opinion concludes that the memo does not fall within the deliberative process exemption, which is found in section 552.111 of the Government Code as part of the Texas Open Records Act, "because the memorandum does not bear upon policymaking." 22 S.W.3d at 364. Justice Enoch concludes, and I agree, that the Act contemplates that only completed reports are public information. I disagree with Justice Enoch, however, that because the memo at issue was used in discussions by the City Council, it was completed.

The Court's task is to discern what the Legislature intended when it included an exception in the Open Records Act for agency memoranda and letters. *See* TEX. GOV'T CODE § 552.111. In this case, the specific inquiry is whether the Legislature intended that exception to include a draft of a memo that was never sent but was

**2.** *See NME Hospitals, Inc. v. Rennels,* 994 S.W.2d 142, 144 (Tex.1999); *Abbott Lab., Inc. v. Segura,* 907 S.W.2d 503, 505 (Tex.1995); *Id.* at 511 (Gonzalez, J., concurring); *Caller–Times Pub. Co. v. Triad Communications,* 826 S.W.2d 576, 580–81 (Tex.1992); *Schroeder v. Texas Iron Works, Inc.,* 813 S.W.2d 483, 485 (Tex.1991); *DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670, 687 (Tex.1990).

**3.** *See A & T Consultants, Inc. v. Sharp,* 904 S.W.2d 668, 676 (Tex.1995); *Thomas v. Oldham,* 895 S.W.2d 352, 356–57 (Tex.1995); *State v. Ross,* 953 S.W.2d 748, 753–54 (Tex. Crim.App.1997); *Dimas v. State,* 987 S.W.2d 152 (Tex.App.—Fort Worth 1999, pet. ref'd); *Summers v. WellTech,* 935 S.W.2d 228, 232–33 (Tex.App.—Houston [1st Dist.] 1996, no writ).

**4.** *See A & T Consultants,* 904 S.W.2d at 676.

prepared solely for discussion in a closed executive session in order to decide what, if anything, should be done about a certain employee. The law is clear that if the matters contained in the draft memo had been presented orally, the City would not be required to disclose the content of that presentation. The Texas Open Meetings Act specifically allows employment matters to be considered in a closed meeting:

§ 551.074. Personnel Matters; Closed Meeting

(a) This chapter does not require a governmental body to conduct an open meeting:

(1) to deliberate the appointment, employment, evaluation, reassignment, duties, discipline, or dismissal of a public officer or employee; or

(2) to hear a complaint or charge against an officer or employee.

(b) Subsection (a) does not apply if the officer or employee who is the subject of the deliberation or hearing requests a public hearing.

TEX. GOV'T CODE § 551.074.

This is clear legislative intent that matters of the kind included in the memo at issue do not have to be aired in public. The Open Records Act should be construed congruently with the Open Meetings Act. It would be odd indeed for the Legislature to have intended for an oral presentation to be exempted from the public domain but not an identical presentation in writing. I agree with the plurality that a document that would otherwise be public information cannot be brought within the deliberative process exemption by discussing it at a closed session. But where, as here, the document was prepared solely for use in a closed meeting and the document does not reflect the decision reached or the reason for that decision, it is exempt. I would also note that the attorney general opinion cited by the plurality does not address the issue in this case. In any event, with all due respect to the Attorney General, his or her

opinions, though persuasive, "are not controlling on the courts." *See Commissioners Court of Titus County v. Agan*, 940 S.W.2d 77, 82 (Tex.1997) (other citations omitted).

The plurality's reliance on the general proposition that we should construe the Open Records Act to favor disclosure rings hollow in light of the express intent of the Legislature that personnel matters are not required to be discussed in a fish bowl. The only hook on which the plurality can hang its conclusion is that the personnel decision in this case did not "formulate policy." But not a single authority cited by the plurality supports that proposition. A number of decisions, to which I now turn, undercut the plurality's conclusions.

**II**

A number of courts have held that documents used in making personnel decisions are indeed included within the deliberative process privilege. Yet the plurality brushes those decisions aside and makes no attempt to distinguish them. On the one hand, the plurality accurately tells us that we should look to federal decisions that construe the federal Freedom of Information Act because it was the model for the Texas Open Records Act. *See* 22 S.W.3d at 360. But the plurality then refuses to examine, much less be guided by, those federal decisions.

Neither the plurality nor Justice Enoch tells us why the Fifth Circuit's decision in *May v. Department of Air Force*, 777 F.2d 1012 (5th Cir.1985) is unpersuasive. It held that the deliberative process exemption applied to evaluations and recommendations that the Air Force kept on file and used in deciding whether to promote officers. Similarly, my colleagues do not explain why the decision in *American Federation of Government Employees, Local 2782 v. U.S. Department of Commerce*, 907 F.2d 203 (D.C.Cir.1990) was misguided. In that case, a union representing federal government employees suspected that the

Census Bureau, which is a unit of the Department of Commerce, had violated its merit system by pre-selecting employees to receive promotions rather than allowing other employees to compete. The District of Columbia Circuit held that forms on which recommendations of particular employees for specific promotions were recorded were exempt under the deliberative process privilege. *See id.* at 208; *see also Kalmin v. Department of Navy*, 605 F.Supp. 1492 (D.D.C.1985) (holding that memoranda recording encounters with or observations about a Navy employee and used by the Navy in making personnel decisions were part of the deliberative process and were exempt under the FOIA).

There are other decisions that do not share the plurality's truncated view of the deliberative process exemption as it relates to personnel and similar matters, but the plurality does not attempt to explain or distinguish them either. We are not told why documents reviewed by the National Endowment for Humanities in determining whether to bestow an endowment upon a Chinese professor for his work on Chinese history fall within the deliberative process exemption, but the document before this Court does not. *See Wu v. National Endowment for Humanities*, 460 F.2d 1030 (5th Cir.1972) (holding that an expression of an opinion considered by the agency in reaching a decision on a grant was included within exemption 5 of the FOIA). How is it that a memorandum found by a federal district court to "deal[ ] exclusively with personnel matters and interpersonal relations among employees of the federal Office of Hearings and Appeals," *Schell v. United States Dep't of Health & Human Servs.*, 843 F.2d 933 (6th Cir.1988), is exempt but a memorandum dealing with a city's decision on how to handle a personnel matter is not? Similarly, why is it that a memorandum setting forth the opinions of a post office employee about whether disciplinary action should be taken against other employees as demanded by a citizen is included within the deliberative process exemption, *see Skelton v. United States*

*Postal Serv.*, 678 F.2d 35 (5th Cir.1982), but not opinions of a City of Garland employee about whether a subordinate should be terminated? Is there any principled distinction between personnel decisions made by the Postal Service and those made by a city? Are the former "policy" decisions but not the latter? The distinction eludes me.

The plurality summarily dismisses these decisions. It says none of the cases "consider the issue here—whether the privilege protects only policymaking agency communications." 22 S.W.3d at 360. That statement, with all due respect, is erroneous. Courts that have directly confronted the question of whether personnel decisions involve "policy" decisions have said, yes, they do.

In *Skelton*, the party making the FOIA request argued that documents reflecting a Postal Service employee's opinion about why certain of its employees should not be disciplined were based on facts and could not be "an opinion concerning 'legal or policy matters' withing the meaning of *Sears.*" *Skelton*, 678 F.2d at 38. The Fifth Circuit rejected that argument, holding that disclosure of the material would serve only to reveal the evaluative process by which a member of the decision-making chain arrived at his conclusions and what those predecisional conclusions were. *See id.* at 39." Such disclosure is precisely what Exemption 5 [of the FOIA] was intended to prevent." *Id.* (citing *Sears*, 421 U.S. at 150, 95 S.Ct. 1504).

A requestor's efforts to distinguish personnel decisions from "policy" decisions was also rejected by the District of Columbia Circuit in *AFGE v. Department of Commerce*. *AFGE*, 907 F.2d 203. In seeking documents that were used in making decisions about promotions within the Department, the party requesting the documents contended that they did not "'evince [anything of an] internal debate on policy options,'" and did not reflect "'the give-and-take of the consultative pro-

cess.' " *Id.* at 207 (quoting *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 866 (D.C.Cir.1980)). The court held otherwise, taking a reasoned and real-world view of the decisions an agency must make:

> The exemption ... covers recommendations, drafts, documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency. Documents which are protected by the privilege are those which would inaccurately reflect or prematurely disclose the views of the agency, suggesting as agency position that which is as yet only a person position.

*Id.* at 208 (quoting *Coastal*, 617 F.2d at 866). The court then described the documents before it as a "dialogue within the agency," and therefore exempt, as distinguished from other documents that reflected the final agency position and accordingly "settled agency policy" about who would be promoted to what position. *Id.* That decision is directly on point. The City Manager's memorandum in this case "recommended personnel actions to which the Bureau [in our case City] was not yet committed." *Id.* A dialogue occurred among the City's management about whether and how to deal with the director of finance.

### III

The plurality's opinion as to the scope of section 552.111 of the Texas Open Records Act is driven by two misguided assumptions. First, the plurality erroneously concludes that a document actually used by a governmental entity in reaching its decision is not "predecisional." Second, the plurality has not asked the right question in determining what is included within or excluded by the deliberative process exemption. The plurality recites the words "policy" and "policy-making" like a mantra and pursues a relentless search to determine whether those words appear in decisions that have defined the exemption's

boundaries. But it makes no attempt to explore what "policy" means when used by the courts in the context of the deliberative process exemption. Not a single decision cited by the plurality supports its cribbed view of what constitutes a "policy" decision. Yet, the plurality summarily concludes with no analysis whatsoever that "policy" decisions do not include personnel decisions about whether to terminate an employee. 22 S.W.3d at 364.

A good place for the plurality to begin in trying to understand the substance of the deliberative process exemption would be a more thoughtful analysis of the United States Supreme Court's decisions in *Renegotiation Board v. Grumman Aircraft Engineering, Corp.*, 421 U.S. 168, 95 S.Ct. 1491, 44 L.Ed.2d 57 (1975), and *EPA v. Mink*, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973). Those decisions explain some of the history of the deliberative process exemption that is set forth in section 5 of the federal Freedom of Information Act. That section of the federal statute, which the Texas exemption tracks, essentially embodies and expands decades of federal common law. *See Mink*, 410 U.S. at 86, 93 S.Ct. 827; *Ackerly v. Ley*, 420 F.2d 1336, 1340 (D.C.Cir.1969) (citing numerous decisions to that effect). The federal common law had long recognized the need for frank exchanges among government officials in many of their deliberations. Accordingly, as *Grumman* instructs, the deliberative process privilege in exemption 5 of the federal Freedom of Information Act carves out documents considered in making a decision but that do not reflect the actual decision. The Supreme Court explained that when an internal memorandum is used by the decisionmaker in arriving at its decision, the memorandum is exempt, but "postdecisional" memoranda setting forth the reasons for an agency decision are not:

> [B]oth Exemption 5 [of the FOIA] and the case law which it incorporates distinguish between predecisional memoranda prepared in order to assist an agency

decisionmaker in arriving at his decision, which are exempt from disclosure, and postdecisional memoranda setting forth the reasons for an agency decision already made, which are not.

*Grumman,* 421 U.S. at 184, 95 S.Ct. 1491. The Court thus drew a clear distinction between final agency decisions, which are subject to disclosure under the FOIA, and documents that are created to assist in making the final decision, which are exempt.

The documents under consideration in *Grumman* were generated in determining whether government contractors had received excessive profits within the meaning of the Renegotiation Act of 1951. In that process, Regional Boards made decisions and prepared Regional Board Reports that were then considered by the national agency, which was the Renegotiation Board. At times, a division of the national Board also made recommendations to the entire Board in the form of Division Reports. Although the national Board sometimes followed the recommendations of the Regional Board Reports or the Division Reports without expressing whether it agreed with the reasoning of those decisions, the Supreme Court held that both the Regional and the Division Reports were within exemption 5 under the FOIA because they were part of the deliberative process. Even though the Regional and Division Reports were often the final written word on the matter, the Court held that the reports were nevertheless predecisional and exempt because only the Board had the authority to make the final decision and the reports were not adopted by the Board:

> [B]ecause both types of reports involved in this case are prepared prior to that decision and are used by the Board in its deliberations; and because the evidence utterly fails to support the conclusion that the reasoning in the reports is adopted by the Board as *its* reasoning, even when it agrees with the conclusion of a report, we conclude that the reports

are not final opinions and do fall within Exemption 5.

*Id.* at 184–85, 95 S.Ct. 1491.

The Court also explained *why* documents considered in making a decision should be and are exempt but documents reflecting the decision itself are not. First, deliberations must remain uninhibited. "The Regional Board Reports are thus precisely the kind of predecisional deliberative advice and recommendations contemplated by Exemption 5 which must remain uninhibited and thus undisclosed, in order to supply maximum assistance to the Board in reaching its decision." *Id.* at 186, 95 S.Ct. 1491. Second, the public's interest in reasons that were not the basis of a decision are minimal. " 'The public is only marginally concerned with reasons supporting a [decision] which an agency has rejected, or with reasons which might have supplied, but did not supply, the basis for a [decision] which was actually adopted on a different ground.' " *Id.* (quoting *Sears,* 421 U.S. at 152, 95 S.Ct. 1504 (alteration in original)). Third, public dissemination of reasons considered by subordinates but not relied upon by the decision-maker might be misleading. "Indeed, release of the Regional Board's reports on the theory that they express the reasons for the Board's decision would, in those cases in which the Board had other reasons for its decision, be affirmatively misleading." *Id.*

The Supreme Court summed up its decision in *Grumman* by saying that even when a document may contain the views of one or more members of the agency, the agency as a whole is the decision-maker. It should not be deprived of documents created to facilitate open and candid discussion by the fear of public ridicule or criticism:

> The point is that the report is created for the purpose of discussion, and we are unwilling to deprive the Board of a thoroughly uninhibited version of this valuable deliberative tool by making Division Reports public on the unsupported as-

sumption that they always disclose the final views of at least some members of the Board.

*Id.* at 190, 95 S.Ct. 1491.

Another decision handed down by the Supreme Court on the same day as *Grumman* emphasized that the distinction between documents used in making a decision and those generated after the decision has been made was "uniform," "long-recognized," and necessary to protect to quality of agency decisions:

> Manifestly, the ultimate purpose of this long-recognized privilege is to prevent injury to the quality of agency decisions. The quality of a particular agency decision will clearly be affected by the communications received by the decisionmaker on the subject of the decision prior to the time the decision is made. However, it is difficult to see how the quality of a decision will be affected by communications with respect to the decision occurring after the decision is finally reached; and therefore, equally difficult to see how the quality of the decision will be affected by forced disclosure of such communications, as long as prior communications and the ingredients of the decisionmaking process are not disclosed. Accordingly, the lower courts have uniformly drawn a distinction between predecisional communications, which are privileged … and communications made after the decision and designed to explain it, which are not.

*Sears,* 421 U.S. at 151–52, 95 S.Ct. 1504. Further, a predecisional document does not lose its exemption after the decision is made public unless it is " 'adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public.' " *Arthur Andersen v. IRS,* 679 F.2d 254, 258 (D.C.Cir. 1982) (quoting *Coastal,* 617 F.2d at 866). Because I find the United States Supreme Court's decisions in *Sears* and *Grumman* persuasive, I cannot agree with Justice Enoch that the memo at issue in this case became public information simply because it was discussed in the process of making a decision.

Nor does the plurality's view of the deliberative process exemption square with the opinion in *Sears.* The Supreme Court was careful to point out in *Sears* that there will be recommendations considered by the decision-maker that relate to overall policies rather than specific policy decisions:

> Our emphasis on the need to protect pre-*decisional* documents does not mean that the existence of the privilege turns on the ability of an agency to identify a specific decision in connection with which a memorandum is . prepared. Agencies are, and properly should be, engaged in a continuing process of examining their policies; this process will generate memoranda containing recommendations which do not ripen into agency decisions; and the lower courts should be wary of interfering with this process.

*Sears,* 421 U.S. at 151 n. 18, 95 S.Ct. 1504. The plurality disregards this admonition.

The Supreme Court's decision in *EPA v. Mink,* 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973), which preceded *Grumman* and *Sears* and the adoption in Texas of the Open Records Act, also indicates that this Court's view about what types of "decisions" fall within the deliberative process exemption is unduly circumscribed. In *Mink* the Supreme Court looked to the legislative history of exemption 5 under the FOIA. The *Mink* decision recounts that an "early formulation" of the deliberative process exemption in drafts of the FOIA "came under attack for not sufficiently protecting material dealing with general policy matters not directly related to adjudication or rulemaking." *Id.* at 90 n. 17, 93 S.Ct. 827. Accordingly, the early version of the exemption was rewritten. The one that came to be included in the FOIA was in "substantially its present form." *Id.* at 91, 93 S.Ct. 827; *see also National Wildlife Fed'n v. United States Forest Serv.,* 861 F.2d 1114, 1118 (9th Cir.

1988) (discussing this legislative history and holding that opinions or recommendations regarding facts or consequences of fact are not automatically ineligible from exemption under exemption 5 and that material is exempt when the disclosure of the manner of selecting or presenting facts would expose the deliberative process).

The plurality asserts that I have misconstrued *Mink*. But it is the plurality that has misconstrued *Mink* by once again viewing the law about the scope of the deliberative process privilege myopically. *Mink* says, as I have accurately quoted above: "That early formulation [of exemption 5] came under attack for not sufficiently protecting material dealing with *general policy matters not directly related to adjudication or rulemaking.*" *Mink*, 410 U.S. at 90 n. 17, 93 S.Ct. 827 (emphasis added).

The implications of the Supreme Court's decisions in *Grumman, Sears,* and *Mink* for the case before us today should be obvious. The memorandum in dispute was prepared for and used in making a decision about how to deal with the City's director of finance. The handling of a city's financial resources is one of its core functions. Even assuming it was not a core function, personnel decisions about who will carry out the responsibilities of a governmental entity, and in what capacity, are intertwined with the entity's view of how best to do its job. To say, as the plurality has done, that a city's deliberations about who is be its director of finance is not a policy matter is illogical and provincial.

## IV

The plurality relies heavily on Justice Ginsburg's decision in *Petroleum Information Corp. v. United States Department of Interior,* 976 F.2d 1429 (D.C.Cir.1992), when she served on the Court of Appeals for the District of Columbia Circuit, for the proposition that "the deliberative process is centrally concerned with protecting the process by which *policy* is formulated."

22 S.W.3d at 366. But the plurality's fixation on the use of the word "policy" does nothing to shed light on what other courts have meant when they discuss "policy" decisions in the context of the deliberative process exemption. The plurality ignores the teaching in Justice Ginsburg's decision that the "key question" is "whether disclosure would tend to diminish candor within an agency." *Petroleum Info.,* 976 F.2d at 1435. "Inquiring whether the requested materials can reasonably be said to embody an agency's policy-informed or -informing judgmental process ... helps us answer the 'key question.'" *Id.*

Justice Ginsburg's decision cites with approval *Dudman Communications v. Department of Air Force,* 815 F.2d 1565 (D.C.Cir.1987), and *Russell v. Department of Air Force,* 682 F.2d 1045 (D.C.Cir.1982), which held that drafts of official military histories fell within exemption 5 of the FOIA because "revelation of editorial changes threatened to 'stifle the creative thinking and candid exchange of ideas necessary to produce good historical work.'" *Petroleum Info.,* 976 F.2d at 1434 (quoting *Dudman,* 815 F.2d at 1569). As discussed above, it is difficult to square these decisions with the plurality's reasoning. Why is it that drafts of military histories involve "policy" decisions, but a draft of a memorandum prepared to consider options in an employment matter does not?

The plurality picks and chooses among the federal decisions construing exemption 5 that were issued after the Texas Legislature enacted the Open Records Act, but apparently approves of Justice Ginsburg's decision in *Petroleum Information Corp.* The plurality seems to think that many federal courts, including the United States Supreme Court, have too broadly construed the deliberative process privilege. Although the plurality relies on a number of decisions decided after the Texas Act was passed, it states at one point that the Legislature could only have looked to the extant federal decisions when it passed the Open Records Act. I will not lengthen this

opinion by discussing whether this latter conclusion is a valid or advisable rule of statutory interpretation. But the rationale of federal circuit court opinions that have specifically considered whether personnel deliberations are policy matters should not be rejected out of hand based on the date of the decision. No court or commentator has suggested that the cases that exempt documents used in making personnel decisions have improperly expanded the deliberative process exemption or that they were incorrectly decided.

In resolving what is within the deliberative process exemption, it is also helpful to consider the types of documents that courts have said are *not* exempt. Non-exempt documents include a database that the Department of Interior was in the process of compiling that included the location, acreage, survey number, and other information about federally-owned land, see *Petroleum Info.*, 976 F.2d 1429; training manuals, see *Stokes v. Brennan*, 476 F.2d 699 (5th Cir.1973); decisions by the General Counsel of the NLRB not to pursue a complaint with the Board, which had the effect of a final decision on the complaint, see *Sears*, 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29; and memoranda sent by Department of Energy lawyers to auditors in the field when the memos were routinely used as precedent, see *Coastal*, 617 F.2d 854. Personnel decisions bear no resemblance to these types of documents.

### V

The only decision that the plurality has cited that remotely supports its reasoning is *Cazalas v. Department of Justice*, 709 F.2d 1051 (5th Cir.1983). The sole issue in that case was whether the Justice Department should be required to pay attorney's fees to a pro se litigant (a former assistant U.S. attorney) who had substantially prevailed in making a FOIA request to her former employer. When Cazalas made her FOIA request, she also had pending an EEOC claim against the Justice Department for alleged discrimination. She had demanded many of the same documents pursuant to 29 C.F.R. § 1613.217, which entitled her to see her EEOC investigative file. The government had repeatedly delayed in responding to these requests and had also denied any obligation to produce certain documents. Ultimately, the Justice Department voluntarily produced all documents sought by Cazalas. It did not, however, agree to pay attorney's fees. In an attempt to escape that obligation, the Justice Department argued, among other things, that some of the requested documents fell within exemption 5 to the FOIA, and although it had produced those documents, it had not been required to do so. With very little discussion, the Fifth Circuit discarded that contention. It reasoned that "the material sought was discoverable in private litigation as well as under the FOIA." *Id.* at 1055.

While the court in *Cazalas* appears to have been correct in concluding that the plaintiff could obtain the documents she sought in a Title VII proceeding, its conclusion that the same analysis should apply under the FOIA is suspect. Most courts considering the question have recognized that the deliberative process exemption is based on what is generally discoverable in litigation, not on the most compelling hypothetical. *See, e.g., Sears*, 421 U.S. at 149 n. 16, 95 S.Ct. 1504 (observing "it is not sensible to construe the Act to require disclosure of any document which would be disclosed in the hypothetical litigation in which the private party's claim is the most compelling"); *see also Mink*, 410 U.S. at 84, 93 S.Ct. 827 (noting that the FOIA "does not permit inquiry into particularized needs of the individual seeking the information" but that "Congress intended to incorporate generally the recognized rule that 'confidential intra-agency advisory opinions are privileged from inspection'"). Specifically with regard to Title VII claims, at least one court has concluded that the fact documents "might be discoverable upon an adequate showing under

Title VII [did not] imply" that they were available under the FOIA. *AFGE,* 907 F.2d at 207.

The plurality offers no authoritative decisions to support its conclusions. To the extent that it purports to rely on *Lett v. Klein Independent School District,* 917 S.W.2d 455 (Tex.App.—Houston [14th Dist.] 1996, writ denied), for the proposition that evaluations of a student do not involve "policy," any precedential value *Lett* may have is in doubt. This Court denied the school district's motion for rehearing in that case in a per curiam opinion, noting that we neither approve nor disapprove of the court of appeals' opinion. *See Klein Indep. School Dist. v. Lett,* 978 S.W.2d 120, 120 (Tex.1998).

In sum, the case law weighs decidedly against the plurality's reasoning. There is also tension between the plurality's conclusions and express provisions of the Open Records Act, to which I now turn.

## VI

The Open Records Act exception at issue in this case says: "An interagency or intraagency memorandum or letter that would not be available by law to a party in litigation with the agency is excepted from the requirements of Section 552.021." TEX. GOV'T CODE § 552.111. Section 552.021, referenced in that exemption, is the section of the Act that defines what is public information. *See* TEX. GOV'T CODE § 555.021.

The exemption in section 552.111 by its express terms only applies when an agency memorandum would not be "available by law to a party in litigation." TEX. GOV'T CODE § 552.111. This clearly refers to the attorney-client privilege and work product, which have long been recognized by decisions of this Court and in procedural and evidentiary rules. But this Court has never decided whether there is a deliberative process privilege in the context of litigation. Nor do the rules of procedure or evidence mention such a privilege. Nevertheless, the Court unanimously and correctly holds today that the Legislature had

in mind the deliberative process privilege recognized in federal case law and embodied in the FOIA. It is only the scope of the deliberative process exemption that is at issue. The plurality would unduly constrict its intended scope, which is evidenced by an examination of the Act as a whole.

The Texas Open Records Act provides that all information is public if it is collected, assembled, or maintained by a governmental body under a law or ordinance or in connection with the transaction of official business. *See* TEX. GOV'T CODE § 552.021. The succeeding section of the Act sheds light on what the Legislature meant by the words "in connection with the transaction of official business." Section 552.022 contains a detailed listing of the types of documents that are considered public information. *See* TEX. GOV'T CODE § 552.022. These categories indicate that the "transaction" of official business means a completed transaction, procedures that are actually in place, or static information. For example, the Act speaks of "a completed report, audit, evaluation, or investigation"; the "final record of voting on all proceedings"; information about an estimate for expending funds "on completion of the estimate"; and a "policy statement or interpretation that has been adopted by an agency." TEX. GOV'T CODE §§ 552.022(1), (4), (5), (13). The Act's references to existing procedures and data are also numerous. *See* TEX. GOV'T CODE §§ 552.022(2), (3), (6), (7), (8), (9), (10), (14).

The concept that a governmental entity's final or at least present decisions and policies are the focus of the Act is given expression in the provisions of the Act itself. The distinction that the federal courts had made before the Texas Open Records Act was passed between documents used by an agency to reach a decision and documents that reflect or explain that decision seems to have been carried forward not only in the exemption embod-

ied in section 552.111, but in the reach of the Act itself.

\* \* \* \* \*

For the foregoing reasons, I cannot join the Court's judgment.

Justice ENOCH, joined by Chief Justice PHILLIPS, concurring.

The Court today overrules the City of Garland's motion for rehearing. In this supplemental opinion, I address a point raised by the City that primarily attacks my concurring opinion.

The City argues that the city manager, not the city council, was the "decisionmaker," and that by presenting the draft document to the city council, he was merely seeking advice about whether to use the document.

That distinction is without a difference. The city manager serves at the pleasure of the city council.[1] He was not asking individual council members what they thought; indeed, he presented the draft document to the city council in session for its comments. The city council used that draft to answer the city manager's request for advice, which he then acted upon.

I am not persuaded by the City's attempt to disguise the determinative nature of the council's input as "advice." The council hires, fires, and supervises the manager. When the manager seeks guidance from the council in session on an important matter, it would be inaccurate to label either the session merely advisory or the accompanying documents as simply "drafts." Thus, even if the city's characterization of the city manager's role in relation to the council is technically correct, I do not think it controls our interpretation of the statute.

1. See GARLAND CITY CHARTER, Art. IV §§ 21(a) & 22.