**DALLAS INDEPENDENT SCHOOL DISTRICT, Appellant**

v.

**OUTREACH HOUSING COR-PORATION/DESOTO I, LTD., Appellee.**

No. 05–07–00288–CV.

Court of Appeals of Texas, Dallas.

March 25, 2008.

Rehearing Overruled April 29, 2008.

John Andrew Martin, Carrington Coleman Sloman & Blumenthal, L.L.P., Dallas, for appellant.

Mark T. Josephs, Jackson, Walker, L.L.P., Dallas, for appellee.

Before Justices WHITTINGTON, BRIDGES, and FRANCIS.

## OPINION

Opinion by Justice BRIDGES.

Dallas Independent School District (DISD) appeals the trial court's summary judgment in favor of Outreach Housing Corporation/DeSoto I, Ltd. (Outreach). In five issues, DISD argues the trial court erred in its interpretation of section 11.1825 of the Tax Code, the record supports DISD's denial of a partial tax exemption on Outreach's property and the trial judge erred in denying DISD's motion for summary judgment, Outreach should have brought its claims in a mandamus action, Outreach presented no summary judgment evidence that DISD abused its discretion in denying Outreach a partial tax exemption, and Outreach was not entitled to declaratory relief. We reverse the trial court's judgment and render judgment affirming DISD's denial of Outreach's request for a partial tax exemption.

In 2004, Outreach purchased property in DeSoto for the purpose of developing an affordable apartment complex for senior citizens. With $9,400,000 in proceeds from issuance of multifamily housing revenue bonds through the DeSoto Finance Corporation, Outreach built a housing complex known as Hickory Manor. Outreach sought a property tax exemption under the tax code provisions relating to low-income housing. On August 18, 2004, DISD sent a letter saying it was "not in a position to restrict any potential sources of revenue" and denying Outreach's request for a tax exemption.

On October 6, 2005, Outreach filed its original petition and application for declaratory relief seeking a judgment that Outreach was qualified for a fifty-percent property tax exemption and DISD's denial of the exemption violated section 11.1825 of the tax code. On August 24, 2006, DISD's board met and again denied a partial tax exemption because, under subsection (x)(3)(A) of section 11.1825 of the tax code, DISD "could not afford the loss in ad valorem tax revenues that would result from granting the exemption." In December 2006, DISD and Outreach both filed motions for summary judgment. The trial

court granted Outreach's motion and denied DISD's motion. This appeal followed.

In its first issue, DISD argues the trial court erred in its interpretation of section 11.1825. Specifically, DISD argues the trial court erred in focusing solely on the word "loss" in its application of section 11.1825. Section 11.1825 of the tax code provides, in relevant part, that a taxing unit, in response to a request for a property tax exemption, shall deny the exemption if the governing body determines that "the taxing unit cannot afford the loss of ad valorem tax revenue that would result from approving the exemption." TEX. TAX CODE ANN. § 11.1825(x)(3)(A) (Vernon Supp.2007).

■ In reviewing the trial court's decision to grant summary judgment, we apply well-known standards. *See Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). An appellate court reviewing a summary judgment must consider whether reasonable and fair-minded fact finders could differ in their conclusions in light of all the evidence presented. *See Wal–Mart Stores, Inc. v. Spates,* 186 S.W.3d 566, 568 (Tex.2006); *City of Keller v. Wilson,* 168 S.W.3d 802, 822–24 (Tex. 2005). There is only one standard for reviewing a summary judgment: a reviewing court must examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *City of Keller,* 168 S.W.3d at 824.

■ On cross-motions for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law. *City of Garland v. Dallas Morning News,* 22 S.W.3d 351, 356 (Tex.2000). When the trial court grants one motion and denies the other, the reviewing court should determine all questions presented. *Id.* The reviewing court

should render the judgment that the trial court should have rendered. *Id.*

■ We must construe statutes as written and, if possible, ascertain legislative intent from the statute's language. *Helena Chemical Co. v. Wilkins,* 47 S.W.3d 486, 493 (Tex.2001). We must always consider the statute as a whole rather than its isolated provisions. *Id.* We should not give one provision a meaning out of harmony or inconsistent with other provisions, although it might be susceptible to such a construction standing alone. *Id.*

In Outreach's motion for summary judgment, it argued DISD had no discretion to deny a partial tax exemption because the approval of an exemption "does not and will not result in a loss of tax revenues to DISD." Outreach argued that, before it developed Hickory Manor, the property at issue was designated as agricultural, and it generated approximately $2500 in annual tax revenues to DISD. Even if DISD granted the fifty percent tax exemption Outreach requested, DISD would still receive $52,834.11 in tax revenues. Because this would result in an increase in tax revenues of more than $50,000, Outreach argued, there could be no "loss" resulting from giving Outreach the fifty percent exemption. As Outreach argued, "as long as DISD receives any amount in excess of the $2500 it received in tax revenues before Hickory Manor's completion, it is benefitting from a gain—not suffering a loss—of ad valorem tax revenues."

■ In contrast, DISD contends this reading of section 11.1825 is incorrect, and the proper application of section 11.1825 involves an assessment of the total potential tax revenue from a property and consideration of the "loss" in tax revenues if a tax exemption is granted. We agree. Section 11.1825 provides a taxing unit shall deny the exemption if the governing body

determines that "the taxing unit cannot afford the loss of ad valorem tax revenue that would result from approving the exemption." Tex. Tax Code Ann. § 11.1825(x)(3)(A) (Vernon Supp.2007). Thus, the "loss" referred to in section 11.1825 is loss *as a result of approving an exemption,* not loss of tax revenue when compared to tax revenues collected before a property is improved. In this case, without an exemption, the subject property would generate approximately $100,000 in tax revenues. If the fifty percent exemption is granted, the tax revenue would be only $50,000. Considering the statute as a whole, we conclude this would result in a "loss" of $50,000 *as a result of approving an exemption. See id.; Wilkins,* 47 S.W.3d at 493. We sustain DISD's first issue to the extent it argues the trial court incorrectly interpreted section 11.1825.

 In DISD's second issue, it argues its interpretation of section 11.1825 is correct, and the summary judgment record establishes as a matter of law it was entitled to make the discretionary decision to deny Outreach's requested exemption. Section 11.1825(x) gives the governing body of a taxing unit the discretion to respond to a request for a tax exemption by (1) approving the exemption in the amount provided by subsection (s); (2) approving the exemption in a different reasonable amount; or (3) denying the exemption if the governing body determines the taxing unit cannot afford the loss of tax revenue that would result from the exemption or additional housing is not needed for individuals or families meeting the income eligibility requirements of section 11.1825. Tex. Tax Code Ann. § 11.1825(x) (Vernon Supp.2007). DISD's motion for summary judgment was supported by affidavits showing that DISD administrators met with Outreach's representatives, considered Outreach's request

for a partial exemption, and denied the exemption because DISD could not afford the loss of tax revenues that would result from granting Outreach an exemption. Outreach presents no evidence that DISD abused its discretion in making this determination. Thus, we conclude summary judgment in favor of DISD is the judgment the trial court should have rendered. *See City of Garland,* 22 S.W.3d at 356. We sustain DISD's second and fourth issues. Based on the foregoing, we need not further address DISD's remaining issues.

We reverse the trial court's judgment and render judgment affirming DISD's denial of Outreach's request for a partial tax exemption.