

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| THE UNIVERSITY OF TEXAS AT AUSTIN and JAY HARTZELL, in his Official Capacity as Interim President of THE UNIVERSITY OF TEXAS AT AUSTIN, | § § § § | No. 08-20-00157-CV<br><br>Appeal from the |
| Appellants/Cross-Appellees, | § | 353rd Judicial District Court |
| v. | § | of Travis County, Texas |
| GATEHOUSE MEDIA TEXAS HOLDINGS, II, INC., d/b/a AUSTIN AMERICAN-STATESMAN, | § § | (TC # No. D-1-GN-19-007002) |
| Appellee/Cross-Appellant. | § | |

**O P I N I O N[1]**

Appellants, the University of Texas at Austin and Jay Hartzell, in his official capacity as President of the University of Texas at Austin (together referred to as the University), appeal the trial court's determination that Appellee, Gatehouse Media Texas Holdings, II, Inc., d/b/a Austin American-Statesman (the Statesman), was entitled to information requested under the Public

---

[1] This case was transferred from our sister court in Austin, and we decide it in accordance with the precedent of that Court to the extent required by TEX. R. APP. P. 41.3.

Information Act (PIA).[2] Faced with competing motions for summary judgment, the trial court denied the University's motion and granted the Statesman's, ordering that the information requested must be disclosed. On appeal, the University seeks protection of the requested records. On cross-appeal, the Statesman argues that, while the trial court reached the correct decision regarding the sought-after information, it erred in denying the Statesman's motion for attorney's fees. For the reasons that follow, we affirm the trial court's rulings on both motions for summary judgment and reverse and remand the trial court's denial of the Statesman's motion for attorney's fees.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  The Statesman's request

On August 30, 2019, a representative from the Statesman sent a PIA request via email to the University, seeking the "final results" of all disciplinary hearings conducted by the University since January 1, 2014, where the University determined that a student was either an "alleged perpetrator of a crime of violence," including forcible sex offenses, or "an alleged perpetrator of a nonforcible sex offense," and, with respect to the allegation, was found to have committed a violation of the University's rules or policies. The request specified that the term "final results" included the name of the student, the violation committed, "any essential findings supporting the institution's conclusion that the violation was committed," and certain details regarding the sanction imposed, including a "description of [the sanction] . . . the date of its imposition and its duration."[3] The Statesman's request mirrored the information permitted to be disclosed under a

---

[2] *See* TEX. GOV'T CODE ANN. §§ 552.001(a), 552.114(b).

[3] Though not important to the analysis, the request was generated as a part of a broader investigation of collegiate athletes who transfer schools to avoid the consequences of disciplinary proceedings. As part of that investigation, another Gatehouse Media outlet, USA Today, published an article on the topic. *See* Kenny Jacoby, USA TODAY NETWORK, *NCAA President Deflects Blame on Sexual Assault Policy* (Dec. 18, 2019).

provision of the Family Educational Rights and Privacy Act of 1974 (FERPA) 20 U.S.C.A. § 1232g(b)(6)(B).

The University's Open Records Coordinator responded to the request by email over two weeks later—on September 16, 2019—stating the University would not produce the information requested because "[FERPA] does not require The University to disclose any student information that is responsive to your request. . . ."[4] In denying the request, the University did not seek an opinion from the Office of the Attorney General (OAG).[5]

## B. The litigation below

As permitted by the PIA, the Statesman filed a petition for mandamus in the 353rd Judicial District Court in Travis County, seeking the disclosure of the requested information. TEX. GOV'T CODE ANN. § 552.321(a). The Statesman also requested attorney's fees and costs. After the University answered the suit, the Statesman filed a traditional motion for summary judgment, contending the requested information was subject to disclosure for two reasons. First, it argued the University could not withhold the requested information because FERPA allowed its release and, as a result, the information did not fall under any exception to the PIA's disclosure requirement.[6] Second, it argued the University must disclose the information because it had failed to comply with § 552.301 of the PIA by timely requesting a decision from the OAG on the applicability of any exception and continued to withhold the information without a compelling reason.

---

[4] Notably, the Statesman's request borrowed much of its language from FERPA, necessarily, so as to avoid requesting information that FERPA does not allow to be disclosed. However, the request itself was explicitly made pursuant to the PIA, not FERPA.

[5] The PIA generally requires that, when a governmental entity wishes to withhold information from disclosure based on a belief that an exception applies, it must ask for a decision from the OAG about whether the requested information falls within the exception. TEX. GOV'T CODE ANN. § 552.301(a). This request must be made no later than the 10th day after the governmental entity receives the request for information. *Id*. § 552.301(b).

[6] The general thrust of the PIA is that all information held by governmental entities is subject to mandatory public disclosure upon request, unless an explicit exception applies. *See* TEX. GOV'T CODE ANN. §§ 552.001, .021, .221.

3

The University opposed the motion, contending in its response that the requested information was excepted from disclosure under the PIA's confidentiality-of-student-records exception. *See* TEX. GOV'T CODE ANN. § 552.114(b). The University also argued, in the alternative, that the requested information should be considered confidential by law under the PIA's confidential-information exception. *Id.* § 552.101 ("Information is excepted from the requirements of Section 552.021 if it is information considered to be confidential by law, either constitutional, statutory, or by judicial decision.").

Regarding the Statesman's argument about the University's failure to seek a decision from the OAG, the University argued that it was not required to request an OAG decision under the plain language of subsection (d) of the confidentiality-of-student-records exception. *See* TEX. GOV'T CODE ANN. § 552.114(d) ("[A]n educational institution may redact information covered under Subsection (b) from information disclosed under Section 552.021 without requesting a decision from the attorney general."). Additionally, the University argued the Statesman had not established the absence of a compelling reason to withhold the requested information; and thus, it did not meet its burden on summary judgment, as it simply made a "bare allegation" that no compelling reason existed. The trial court set a hearing for February 6, 2020, on the Statesman's motion for summary judgment.

On the evening before the hearing, the University filed its own motion for summary judgment on these same issues. The February 6 hearing proceeded as planned, and at the conclusion, the trial court took the matter under advisement. The parties subsequently agreed to a briefing schedule on the University's motion for summary judgment and also agreed the trial court could consider the competing motions together.

4

## C. The trial court's ruling

After the parties completed briefing on the University's motion for summary judgment, the trial court issued an order on February 28, 2020, granting the Statesman's motion and denying the University's. Along with the written order, the trial court issued and filed a letter explaining its rulings. The trial court's letter began with a disclaimer stating that the explanation therein did not exclude other reasons the trial court may have for its order or limit the possible bases of support for its order. The remainder of the trial court's letter explained that it believed the University was required to request a ruling from the OAG before withholding the requested information. It concluded the failure to request such a ruling raised the presumption that the information was subject to disclosure absent a compelling reason to withhold the information; and in turn, the trial court found no such reason in the record.

## D. The Statesman's request for attorney's fees and the University's motion for reconsideration

On March 20, 2020—after the trial court had issued its order—the Statesman filed a motion for attorney's fees and to enter a final judgment. In support, the Statesman submitted affidavits and other documentation to prove its fees and argued the fee award was mandatory under § 552.323(a) ("In an action brought under Section 552.321 . . . the court shall assess costs of litigation and reasonable attorney fees incurred by a plaintiff who substantially prevails" except in cases where the trial court finds that the governmental entity acted "in reasonable reliance on: (1) a judgment or an order of a court applicable to the governmental body; (2) the published opinion of an appellate court; or (3) a written decision of the attorney general. . . ."). In its motion, the Statesman acknowledged the University had cited various appellate court decisions but argued none were on point, and that the University therefore could not have reasonably relied on them.

On April 9, 2020, the University filed a motion to reconsider the order. In its motion, the University informed the trial court that it had requested a decision from the OAG regarding the Statesman's request on March 17, 2020—over six months after the Statesman's initial request for information and over two weeks after the trial court had signed the order granting the Statesman's motion for summary judgment. The University also asked the trial court to delay signing a final judgment until the OAG responded with its decision so that the trial court could reconsider its summary judgment rulings.

Five days later—on April 14, 2020—the trial court made clear in an email to counsel for both parties that it would not reconsider its order; that the basis for its decision was the PIA's requirement that a governmental entity wishing to withhold information under an exception *timely* requests a decision from the OAG; that briefing on the University's motion to reconsider was not necessary; that a hearing on the same was not necessary; and that the parties were to "continue with [their] efforts to reach an agreement on submission of attorney's fees." The University filed its response to the Statesman's motion for attorney's fees and to enter a final judgment on April 17, 2020. The Statesman filed its reply to the University's response on April 22, 2020.

That same day—April 22—the University received a response from the OAG regarding the Statesman's original request for information. The OAG's position, as stated in the letter, was that FERPA does not allow educational institutions to disclose unredacted personally identifiable information (PII) contained in education records to the OAG for the purpose of the PIA's review process. The letter stated that, in accordance with the PIA's review requirement found in § 552.301(e), educational authorities would be required to submit any education records in redacted form when seeking a ruling on the applicability of a raised exception. However, the letter went on to say—presumably in an abundance of caution for the protection of PII—that the OAG

6

will not even review supposedly-redacted education records in the review process, just in case they were not appropriately redacted. The letter continued by stating that "institutions may withhold from public disclosure personally identifiable information in education records without the necessity of requesting an attorney general decision." The letter concluded with reference to "Open Records Decision No. 634 (1995)," an OAG decision that we will address below.

Despite the trial court's April 24, 2020 email, which preemptively stated that it was of no consequence to the resolution of this case what the OAG would ultimately say in response to the University's untimely request, the University filed a sur-reply on April 23, 2020, purportedly related to the briefing on the Statesman's motion for attorney's fees. It informed the trial court of the OAG's response and attached it as an exhibit. The trial court again emailed counsel for all parties, reiterating that the OAG's response was irrelevant to the basis of its decision and that the attempt to submit it as summary judgment evidence was untimely, as it followed the court's hearing and decision.

The trial court heard the Statesman's motion for attorney's fees on April 23, 2020, and ultimately filed its Final Judgment on June 9, 2020. The Final Judgment reiterated that it had granted the Statesman's summary judgment motion and denied the University's. It ordered the University to disclose the sought-after information to the Statesman. However, the trial court denied the Statesman's motion for attorney's fees, explaining in an earlier email to counsel that it determined the University relied on a plausible interpretation of a statute that no court had yet interpreted.

The University appealed from the final judgment with respect to the trial court's finding that it was required to release the documents, and the Statesman filed a cross-appeal of the trial court's denial of its request for attorney's fees.

7

## II. ISSUES ON APPEAL

In its appeal, the University contends the trial court erred in denying its motion for summary judgment and in granting the Statesman's cross-motion. Specifically, the University argues it is entitled to judgment as a matter of law, because (1) the requested records were excepted from disclosure under the student record exception found in § 552.114 of the PIA, and (2) under this exception, the PIA does not require the University to request an OAG decision before withholding the requested information. In the alternative, the University argues it raised a question of fact as to whether the requested information was excepted under § 552.101—the confidential-information exception. It also argues it raised a question of fact as to whether it had a compelling reason for withholding the information.

In its cross-appeal, the Statesman presents the additional issue of whether the trial court abused its discretion in denying its motion for attorney's fees. We address all issues below.

## III. THE PUBLIC INFORMATION ACT

In its two issues on appeal, the University argues the trial court erred in denying its motion for summary judgment and in granting the Statesman's cross-motion for summary judgment. The University contends it was not required to seek a determination from the OAG before withholding the requested information. It contends the information was excepted from mandatory disclosure under either of two exceptions to the PIA: (1) the confidentiality-of-student-records exception (§ 552.114); or (2) the confidential-records exception (§ 552.101).

### A. Standard of review

We review a trial court's summary judgment rulings de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 864 (Tex. 2010). A party moving for traditional summary judgment under TEX. R. CIV. P. 166(c) has the burden to establish that no genuine issue of material fact exists

and that it is entitled to judgment as a matter of law. *Id*. When reviewing a ruling on summary judgment, "we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When the trial court does not specify the grounds for its rulings on summary judgment, we must uphold the judgment if any of the grounds asserted in the motion and preserved for appellate review are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003). When both parties move for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000). Neither party can prevail simply because the other party failed to carry its own burden on its own motion. *Nexstar Broad., Inc. v. Fidelity Commc'ns Co.*, 376 S.W.3d 377, 381 (Tex. App.—Dallas 2012, no pet.). When, as here, both parties move for summary judgment on the same issue and the trial court grants one motion and denies the other, we consider the evidence presented by both sides, determine all questions presented, and either affirm the judgment or render the judgment the trial court should have rendered. *Valence*, 164 S.W.3d at 661.

## B. Applicable law

### 1. The PIA generally

The PIA's general purpose is to provide the public with "complete information about the affairs of government and the official acts of public officials and employees." TEX. GOV'T CODE ANN. § 552.001(a); *Jackson v. State Office of Admin. Hearings*, 351 S.W.3d 290, 293 (Tex. 2011). "The Act mandates a liberal construction to implement this policy and one favoring a request for information." *City of Garland*, 22 S.W.3d at 356. The PIA includes the following policy statement regarding provisions of the chapter:

> Under the fundamental philosophy of the American constitutional form of representative government that adheres to the principle that government is the servant and not the master of the people, it is the policy of this state that each person is entitled . . . to complete information about the affairs of the government and the official acts of public officials and employees.

TEX. GOV'T CODE ANN. § 552.001(a). Moreover, this provision further provides, "[t]he people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know." *Id*. Recognizing that access to public information is necessary to allow the public to "retain control over the instruments they have created," the PIA makes virtually all information held by a governmental entity presumably open and subject to mandatory disclosure unless an express exception applies. TEX. GOV'T CODE ANN. §§ 552.001(a), 552.021[7]; 552.221; *see also Abbott v. Texas Dep't of Mental Health & Mental Retardation*, 212 S.W.3d 648, 663 (Tex. App.—Austin 2006, no pet.).

Upon receiving a request for information under the PIA, a governmental entity must promptly produce public information for inspection, duplication, or both. TEX. GOV'T CODE ANN. § 552.221(a). However, the PIA does provide explicit exceptions to the disclosure requirement. *See, e.g.*, TEX. GOV'T CODE ANN. §§ 552.026-.028, 552.101-.162. Some of the exceptions apply to certain types of information, while others except disclosure of information to certain categories of requestors. *Compare id*. § 552.114 (excepting from disclosure certain confidential information found within student records) *with id*. § 552.028 (excepting from mandatory disclosure all types of information when the request comes from an incarcerated individual).

---

[7] TEX. GOV'T CODE ANN. § 552.021 requires that "public information [be] available to the public at a minimum during normal business hours of the governmental body." This section operates as part the PIA's disclosure mandate. *See, e.g.*, TEX. GOV'T CODE ANN. § 552.114(b).

### 2. Seeking a determination from the OAG

When a governmental entity wishes to withhold requested information from public disclosure and there has not been a previous determination about whether the specific information falls within an exception, the governmental entity is required to seek a decision from the OAG about whether the exception applies. TEX. GOV'T CODE ANN. § 552.301(a). Such a request must be made to the OAG no later than the tenth business day after the governmental entity received the request for information. TEX. GOV'T CODE ANN. § 552.301(d).

If the governmental entity fails to provide the requestor with the information or timely seek a decision from the OAG regarding an exception to the PIA, "the information requested in writing is presumed to be subject to required public disclosure and must be released unless there is a compelling reason to withhold the information." TEX. GOV'T CODE ANN. § 552.302; *see also City of Houston v. Houston Mun. Emps. Pension Sys.*, 549 S.W.3d 566, 585 (Tex. 2018).

### 3. Construing the PIA

When construing the PIA, the legislature's intent as expressed in the statutory language is our primary concern. *See Tyler v. Paxton*, No. 03-12-00747-CV, 2015 WL 410281, at *3 (Tex. App.—Austin 2015, no pet.). "We apply the plain meaning of the text unless a different meaning is supplied by legislative definition or is apparent from the context or the plain meaning leads to absurd results." *Id*. We avoid construing individual provisions in a statute in isolation from the statute as a whole. *Id*. (quoting *Railroad Comm'n of Texas v. Texas Citizens for a Safe Future and Clean Water*, 336 S.W.3d 619, 628 (Tex. 2011)). We must consider an individual provision's role in the broader statutory scheme and our construction "must be consistent with its underlying purpose and the policies it promotes." *Id*. (quoting *Northwestern Nat'l Cnty. Mut. Ins. Co. v. Rodriguez*, 18 S.W.3d 718, 721 (Tex. App.—San Antonio 2000, pet. denied). We "read statutes contextually to give effect to every word, clause and sentence" and "strive to give the provision a

11

meaning that is in harmony with other related statutes." *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 838 (Tex. 2018) (citing *Texas State Bd. of Exam'rs of Marriage & Family Therapists v. Texas Med. Ass'n*, 511 S.W. 3d 28, 41 (Tex. 2017). Finally, in this instance, the PIA directs by explicit language that its provisions "shall be liberally construed to implement [its] policy." TEX. GOV'T CODE ANN. § 552.001(a).

### 4. Burden on summary judgment

In the context of a governmental entity's failure to seek an OAG decision in denying a request for public information, the Austin Court of Appeals has held that the requesting party meets its summary judgment burden by establishing the facts that give rise to the § 552.302 presumption. *See Vandiver v. Star-Telegram, Inc.*, 756 S.W.2d 103, 106 (Tex. App.—Austin 1988, no writ) (holding that the newspaper met its summary judgment burden under the PIA's predecessor statute[8] when it established (1) the governmental entity denied the information request; (2) the governmental entity did not supply any authority by the OAG or a court when denying the request; and (3) the governmental entity did not request a decision from the OAG). The burden then shifts to the governmental entity to demonstrate that a "compelling reason" supports withholding the requested information. *See* TEX. GOV'T CODE ANN. § 552.302; *Paxton v. City of Dallas*, 509 S.W.3d 247, 256 (Tex. 2017). If the governmental entity does not attempt to meet its burden or

---

[8] Under the Open Records Act, there was a nearly identical procedure for seeking a decision from the OAG when a governmental entity wished to withhold requested information under an exception to the disclosure rule:

> If a governmental body receives a written request for information which it considers within one of the exceptions stated in Section 3 of this Act, but there has been no previous determination that it falls within one of the exceptions, the governmental body within a reasonable time, no later than ten days, after receiving a written request must request a decision from the attorney general to determine whether the information is within that exception. If a decision is not so requested, the information shall be presumed to be public information.

Act of May 19, 1973, 63rd Leg., R.S., ch. 424, § 7(a), 1973 Tex. Gen. Laws 1112, 1116 (codified at TEX. REV. CIV. STAT. ANN. art. 6252–17a § 7(a).

12

falls short, the requesting party is entitled to summary judgment and the information must be disclosed. *See id.*

Texas courts have discussed—and disagreed about—whether a governmental entity in this situation can establish a "compelling reason" simply by asserting the relied-upon statutory exception to disclosure. For example, the Austin Court of Appeals, in another case originating from an information request under the PIA's predecessor-statute (the Open Records Act), held that once the presumption of openness attached due to the governmental entity's failure to timely request a decision from the OAG, the governmental entity was required to make a "compelling demonstration," above and beyond simply producing evidence that the information fell within the protection of a statutory exception. *See Hancock v. State Bd. of Ins.*, 797 S.W.2d 379, 381 (Tex. App.—Austin 1990, no writ). On the other hand, the Dallas Court of Appeals, when presented with a similar case, disagreed with *Hancock*, holding that the presumption of openness simply shifted the burden to the governmental entity "to produce evidence supporting its claim that an exception applies." *City of Garland v. Dallas Morning News*, 969 S.W.2d 548, 556 (Tex. App.—Dallas 1998), *aff'd*, 22 S.W.3d 351 (Tex. 2000).

In affirming *City of Garland v. Dallas Morning News*, the Supreme Court of Texas did not decide whether a governmental entity subject to § 552.302's presumption of openness must make a "compelling demonstration," above and beyond simply showing evidence that the requested information falls under the protection of the relied-upon PIA exception. *City of Garland*, 22 S.W.3d at 364. There, the Supreme Court did not reach the issue because it determined that the governmental entity did not even meet the burden of proving the requested information fell into one of the PIA's exceptions. *Id*.

13

## C. Analysis

### 1. Whether the Statesman met its initial summary judgment burden

Here, the University does not dispute that it denied the Statesman's written request for information. Therefore, the Statesman has sufficiently established that it made a written request, pursuant to the PIA, and the request was denied by the University. The entirety of the body of the University's denial-email is reproduced here:

> This email is provided in final response to your below request to The University of Texas at Austin. [FERPA] does not require The University to disclose any student information that is responsive to your request, and we decline to do so. Thank you.

We note, again, the denial was sent to the Statesman seventeen days after the original request, which was seven days after the University was required to either respond to the request under § 552.221(d) or request a decision from the OAG under § 552.301(b). At any rate, the University did not supply any authority from the OAG or any court to justify its denial of the request. Instead, the University purportedly relied on FERPA as justification for its non-disclosure. But the Statesman had explicitly requested the information pursuant to the PIA, not FERPA; and the permissive nature of the disclosure of "final results" information under FERPA is not in dispute. Thus, we initially determine the Statesman has established its request was denied without the University supplying authority from the OAG or from a court of law.

The record also establishes the University did not seek a decision from the OAG regarding the potential applicability of any exception to the PIA within the statutory ten-day period, or by the time it denied the Statesman's request after seventeen days, or at any time until after the trial court had already made its summary judgment rulings. The fact that the University eventually sought such an OAG decision in this case is of no consequence to our decision here. First, it was not sought by—or even close to—the clear statutory deadline, but only after the trial court had

14

already ruled on the motions for summary judgment. Second, the OAG's ultimate response did not address the University's contention that the requested information fell under an exception to the PIA's disclosure mandate. Finally, the trial court made clear in its emails to counsel on April 14 and April 24, 2020, it would not consider any response from the OAG based on the University's untimely request for decision. Because the trial court did not consider the OAG's response, neither do we. *See* TEX. R. CIV. P. 166a(c) ("Except on leave of court, with notice to opposing counsel, the motion and any supporting affidavits shall be filed and served at least twenty-one days before the time specified for hearing."); *see also Benchmark Bank v. Crowder*, 919 S.W.2d 657, 663 (Tex. 1996) (holding that an appellate court may not consider evidence that was not before the trial court). Relevant to this dispute, the Statesman sufficiently established the University did not seek a decision from the OAG regarding the potential application of any exception to the PIA's disclosure mandate regarding the information requested by the Statesman.

Before moving next to the University's burden, we must first address an additional argument from the University. It contends it was not required to seek a determination from the OAG under the plain language of subsection (d) of the confidentiality-of-student-records exception, which states, in relevant part: "an educational institution may redact information covered under Subsection (b) from information disclosed under Section 552.021 without requesting a decision from the attorney general." TEX. GOV'T CODE ANN. § 552.114(d). But we are not persuaded that this redaction provision applies such that it relieves a public, educational institution from its duty to seek a decision from the OAG when it wishes to withhold *all* information requested. The PIA does not define "redact" or its constituent terms; accordingly, we must apply the word's common, ordinary meaning unless a different or more precise definition is apparent from the statutory context, or the plain meaning yields an absurd result. *See Tyler*, 2015

15

WL 410281, at *3. In Merriam-Webster's Collegiate Dictionary, the term "redact" is defined as: "to select or adapt (as by obscuring or removing sensitive information) for publication or release" and "to obscure or remove (text) from a document prior to publication or release." *Redact*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1041 (11th ed. 2003). Similarly, Black's Law Dictionary defines "redaction" as "the careful editing of a document, esp. to remove confidential references or offensive material." *Redaction*, BLACK'S LAW DICTIONARY 1467 (10th ed. 2014). According to these definitions, the word redact is used when there is a substantive publication or release, but a subset of the information is removed or obscured. This meaning differs from a complete refusal to release information at all. Indeed, even the text of Subsection (d) provides for allowable redactions "from information disclosed under Section 552.021." TEX. GOV'T CODE ANN. § 552.114.

We interpret subsection (d) of the confidentiality-of-student-records exception as removing the requirement of seeking an OAG decision in the simple and narrow event where an educational institution must redact certain confidential data—data covered by subsection (b)—that would otherwise be included within information that is required to be disclosed. This interpretation comports with subsection (b)'s reference to FERPA, which—at least with regard to these "final results"—makes clear what can and cannot be disclosed. In other words, because FERPA is very clear about what information related to "final results" is permitted to be disclosed (e.g., name of the violator, the violation committed, and any sanction imposed) and what is required to be kept private (e.g., the names of victims and witnesses), there is no further need for OAG consideration when an institution discloses what FERPA permits and redacts what FERPA protects.

Given the Statesman's request narrowly sought information not protected by FERPA, our concern here remains focused on the plain language of the PIA. *See Tyler*, 2015 WL 410281, at

16

\*3. The plain language of subsection (d) does not mean educational institutions are relieved of their duty to seek an OAG decision on the applicability of the broader § 552.114 exception to an entire information request; institutions are only relieved of that duty with respect to partial redactions, and when those redactions are made in order to comply with subsection (b)'s confidentiality provision. Here, to the extent the University contends that all "final results information" is subject to subsection (b)'s confidentiality protection, subsection (d) could not apply because there would be nothing disclosed under § 552.021 from which to redact. *See* TEX. GOV'T CODE ANN. § 552.114(d).

### 2. Whether the University established a compelling reason for withholding the requested information

Having found the PIA required the University to request an OAG decision on the applicability of exceptions it relied on—and that it denied the Statesman's request without doing so—the burden shifted to the University to demonstrate a "compelling reason" for withholding the requested information. *See* TEX. GOV'T CODE ANN. § 552.302; *Paxton*, 509 S.W.3d at 256. Yet, when responding to the Statesman's motion for summary judgment, the University simply reiterated its contention that the PIA excepted the information from disclosure. Aside from relying on the proffered exceptions, it offered no reason—compelling or otherwise—for withholding the "results information." Instead, the University argued it was the Statesman that shouldered the burden to establish the University lacked such compelling reason—a burden of proof which would effectively require the Statesman to prove a negative. The difficulty—and near impossibility—of determining and disproving any possible compelling reason the University might come up with is precisely the purpose of the burden-shifting framework highlighted in § 552.302. *See* TEX. GOV'T CODE ANN. § 552.302.

We disagree with the University's burden-shifting-argument. Unless it becomes necessary to our analysis, we are hesitant to initially say whether the University was required to make a "compelling demonstration," above and beyond providing evidence and argument establishing the requested information was protected by a statutory exception of the PIA. *See City of Garland*, 22 S.W.3d at 364. Instead, we begin by addressing whether the University raised a fact issue as to the applicability of either of the PIA exceptions it argued in response to the Statesman's motion for summary judgment, which were preserved on appeal: (1) the confidentiality-of-student-records exception (§ 552.114); or (2) the confidential-information exception (§ 552.101).

### a) The confidentiality-of-student-records exception

The confidentiality-of-student-records exception begins by defining the term "student record" as either information that constitutes "education records," as that term is defined in FERPA, or information in a record of an applicant for admission to an educational institution. Correlating with that definition, "education records" are defined in FERPA as the "records, files, documents, and other materials which--(i) contain information directly related to a student; and (ii) are maintained by an educational agency or institution or by a person acting for such agency or institution." 20 U.S.C.A. § 1232g(a)(4)(A). Of note, FERPA's definition further provides several exceptions not relevant here. *Id*. § 1232g(a)(4)(B).

Moving to the next part of the PIA's confidentiality-of-student-records exception, it further states:

> (b) Information is confidential and excepted from the requirements of Section 552.021 if it is information in a student record at an educational institution funded wholly or partly by state revenue. This subsection does not prohibit the disclosure or provision of information included in an education record if the disclosure or provision is authorized by [FERPA] or other federal law.

TEX. GOV'T CODE ANN. § 552.114(b).

18

The University argues the first sentence of subsection (b) creates an exception to mandatory disclosure for everything found within a student record, while the second sentence gives the University the discretion to voluntarily decide whether to disclose information within a student record even when disclosure is authorized by FERPA. By its reading of the provision, the University draws a parallel to the PIA's voluntary-disclosure provision. *See* TEX. GOV'T CODE ANN. § 552.007 ("This chapter does not prohibit a governmental body or its officer for public information from voluntarily making part or all of its information available to the public, unless the disclosure is expressly prohibited by law or the information is confidential under law.") It also draws a parallel to other portions of the PIA where governmental entities are excepted from mandatory disclosure, but still allowed to voluntarily disclose information. *See, e.g.*, TEX. GOV'T CODE ANN. § 552.028 (stating that a governmental entity is not required to accept or comply with a request for information from an individual who is incarcerated or confined in a correctional facility, but subsequently allowing the governmental entity to disclose information so such an individual, using similar "does not prohibit" language). However, under this proposed voluntary-disclosure interpretation, the second sentence of subsection (b) would be duplicative of the voluntary-disclosure provision found in § 552.007. In other words, under the University's interpretation, the analysis would remain the same under § 552.114(b) and § 552.007 regarding non-confidential information within a student record. We disagree.

We conclude the second sentence of § 552.114(b) operates as an exception to the exception provided in the first sentence of the provision. *See Rodriguez*, 547 S.W.3d 830, 838 (We "read statutes contextually to give effect to every word, clause and sentence . . . because every word or phrase is presumed to have been intentionally used with a meaning and a purpose."). Here, the first part of the first sentence of subsection (b) provides the exception to the PIA's required disclosure:

"Information is confidential and excepted from the requirements of Section 552.021 if . . . ." TEX. GOV'T CODE ANN. § 552.114(b). This operative phrase stands in stark contrast to those clauses in other PIA exceptions where information is only excepted from disclosure, not "confidential *and* excepted." *Compare id.* § 552.114(b) *with, e.g.*, *id*. §§ 552.103(a), .104(a), .105 (all of which begin with the phrase: "Information is excepted from the requirements of Section 552.021 if . . . ."). Under each of the exceptions mentioned above whose operative phrases begins with "[i]nformation is excepted from the requirements of Section 552.021," there is no second sentence providing for permissive voluntary disclosure, presumably because § 552.007 applies to each of those exceptions and there is no need to include a duplicative sentence stating so.

We also look to other exceptions whose operative phrases do begin with the same language found in § 552.114. Section 552.1085(c), for example, includes an exception for confidential and sensitive crime scene images. TEX. GOV'T CODE ANN. § 552.1085(c). The operative phrase in that exception mirrors the confidentiality-of-student-records exception: "[A] sensitive crime scene image in the custody of a governmental body is *confidential and excepted* from the requirements of Section 552.021 . . . . [emphasis added]." *Id*. Like § 552.114 at issue here, § 552.1085 includes an additional sentence after the operative sentence, but within the same subsection, that further clarifies the exception as applying "to any sensitive crime scene image regardless of the date that the image was taken or recorded." *Id*.

By utilizing the operative language "confidential and excepted," we determine the legislature understood the voluntary-disclosure provision found in § 552.007 would *not* apply to information covered by § 552.114(b), as a result of the information's status as confidential. The first sentence, if it was standing alone, would create a complete prohibition on disclosing any information within a student record. So, the legislature included the second sentence to clarify that

20

the exception or prohibition does not apply to information authorized for disclosure by FERPA or other federal law. This interpretation comports with our dual mandates requiring we avoid construing individual provisions in a statute in isolation from the statute in whole, and we liberally construe the PIA to implement its policy. *See Tyler*, 2015 WL 410291, at *3; TEX. GOV'T CODE ANN. § 552.001(a).

This interpretation is also consistent with the PIA's underlying purpose of providing the public with "complete information about the affairs of government." *See* TEX. GOV'T CODE ANN. § 552.001(a). Because the information sought is not confidential under FERPA, this interpretation appropriately places the public's interest in obtaining information about the governmental entity's interest in withholding the information. *See id.* As the trial court pointed out in its letter to the parties that accompanied its ruling, the Statesman's request does not include the identity of any victim, witness, or anyone other than the perpetrator. It does not include the name of any person who was an alleged perpetrator, but not found to have actually committed a violation of the University's rules and policies in connection with the allegation. And the information sought, which is directly related to the safety of students on campus and the University's response to incidents where students commit violent acts, is of significant public interest.

Finally, as the Statesman points out, a prior order from the OAG confirms this understanding of the requirement to seek an OAG decision with regard to the § 552.114 exception. In Tex. Att'y Gen. ORD 634 (1995), in response to a request for clarification from the Arlington Independent School District, the OAG concluded that:

> [A]n educational agency or institution that is also state-funded may withhold from public disclosure information that is excepted from required public disclosure by section 552.114 as a "student record," insofar as the "student record" is protected by FERPA, without the necessity of requesting an attorney general decision as to that exception.

21

As a result of the foregoing, and because the Statesman's request was narrowly drafted to include only information that is considered by FERPA to be non-confidential and allowed to be disclosed, we determine the University has not raised a fact issue as to the applicability of the confidentiality-of-student-records exception.

### b) The confidential-information exception

The confidential-information exception is simpler, consisting of only one sentence: "Information is excepted from the requirements of Section 552.021 if it is information considered to be confidential by law, either constitutional, statutory, or by judicial decision." TEX. GOV'T CODE ANN. § 552.101. A constitutional right to privacy must be contained in a recognized zone of privacy. *Indus. Found. Of the S. v. Texas Indus. Accident. Bd.*, 540 S.W.2d 668, 680-81 (Tex. 1976). These include disclosing matters related to (1) marriage; (2) procreation; (3) contraception; (4) family relationships; (5) child rearing; and (6) the freedom to make educational choices. *Id.*; *King v. Paxton*, 576 S.W.3d 881, 899-900 (Tex. App.—Austin 2019, pet. denied). Not every publication of embarrassing information, however, implicates individuals' constitutional privacy concerns. For example, the zones of privacy do not shield information concerning individuals who have been accused of breaking laws. *See Indus. Found.*, 540 S.W.2d at 680 (citing *Paul v. Davis*, 424 U.S. 693 (1976)). And the public has its own constitutional right to access information concerning crime in the community. *Houston Chronicle Pub. Co. v. City of Houston*, 531 S.W.2d 177, 186 (Tex. App.—Houston [14th Dist.] 1975), *writ ref'd n.r.e.*, 536 S.W.2d 559 (Tex. 1976). The Statesman's requested information does not implicate any recognized zone of constitutional privacy, and the University has not presented this court with any statutory law or judicial opinion that would indicate otherwise. Conversely, as stated above, FERPA makes clear that the information requested is not confidential in nature. As a result of the

foregoing, the University has not raised a factual issue that this information falls within the § 552.101 exception.

Because the University failed to raise a fact issue as to either of its claimed exceptions, and further failed to establish a compelling reason for withholding the requested information, we conclude it failed to meet its burden of proof on its own summary judgment motion, and on the burden-shifting analysis under the Statesman's motion. Accordingly, we overrule the University's two issues on appeal. The trial court did not err in denying the University's motion for summary judgment, nor in granting the Statesman's cross-motion for summary judgment.

## IV. ATTORNEY'S FEES

On cross-appeal, the Statesman argues the trial court erred in denying its motion for attorney's fees under § 552.323(a) of the PIA because the University did not rely on any of the statutorily allowable sources of law in failing to seek a determination from the OAG or in denying its information request.

### A. Standard of review

A trial court's ruling on a motion for attorney's fees under § 552.323(a) of the PIA is reviewed for an abuse of discretion. *See, e.g., Adkisson v. Paxton*, 459 S.W.3d 761, 779 (Tex. App.—Austin 2015, no pet.). However, because trial courts have "no discretion in determining what the law is" or applying the law to the facts, they abuse their discretion when they incorrectly analyze or apply the law. *In re Dawson*, 550 S.W.3d 625, 628 (Tex. 2018) (per curiam).

### B. Applicable law

In an action brought under § 552.321 of the PIA, a court "shall assess costs of litigation and reasonable attorney fees incurred by a plaintiff who substantially prevails," unless "the court finds that the governmental body acted in reasonable reliance on: (1) a judgment or an order of a

court applicable to the governmental body; (2) the published opinion of an appellate court; or (3) a written decision of the attorney general. . . ." TEX. GOV'T CODE ANN. § 552.323(a).

## C. Analysis

As plaintiff, the Statesman brought this action under § 552.321. The Statesman ultimately prevailed on cross-motions for summary judgment. After the trial court rendered its order granting the Statesman's motion for summary judgment and denying the University's, the Statesman moved for attorney's fees and filed uncontroverted affidavits with testimony establishing the reasonableness and necessity of the fees. The University responded, arguing it had reasonably relied upon appellate cases and written OAG decisions to support its positions in the underlying proceedings.

The University's response pointed to a number of appellate cases recognizing the University's discretion under FERPA to determine whether to release education records. *See, e.g.*, *B.W.B. v. Eanes Indep. Sch. Dist.*, 2018 WL 454783, at *8 (Tex. App.—Austin 2018, no pet.) (mem. op.) ("[N]either this Court, nor the trial court, nor OAG is the proper entity to interpret FERPA and its application to EISD's records—it is EISD that must make FERPA determinations."). However, the issue in this case was not about FERPA, but whether the requested information was excepted from mandatory disclosure under the PIA. More specifically, whether the University was required to seek a decision from the OAG before denying the Statesman's narrowly drafted request. The interpretation of any provision of FERPA was not at issue; the University concedes that FERPA does not protect "final results" information from disclosure. Because the Statesman made its request pursuant to the PIA, no interpretation of FERPA was otherwise implicated. As a result, none of the cases cited by the University addressed the issues in

24

this case, and the University could not have reasonably relied on them as justification for withholding information under the PIA.

The University also contended that it relied on several OAG decisions. First, the University referred to a 2015 OAG decision that was cited in the *Eanes Indep. Sch. Dist.* case. *See Eanes*, 2018 WL 454783, at *2. But that OAG decision does not address the type of records requested in this case. *See* Tex. Att'y Gen. OR2015-00433. There, Eanes I.S.D. sought to withhold records related to a soccer coach after a parent became concerned the coach was bullying their daughter and sharing her private information. *Eanes*, 2018 WL 454783, at *1. Aside from the difference in the information being requested, the OAG's decision in that case was predicated on the OAG's inability to review specific records protected by FERPA. *See id*. But, here, the information requested by the Statesman is explicitly not protected by FERPA. *See* 20 U.S.C.A. 1232g(b)(6)(B). That decision in *Eanes* also shows that the OAG can determine whether exceptions preclude the release of information without actually reviewing the records themselves. *See* Tex. Att'y Gen. OR2015-00433.

Next, the University cited to three OAG decisions for the proposition that § 552.114(d) relieved it from the duty of seeking an OAG decision regarding the applicability of the confidentiality-of-student-records exception generally. These were Tex. Att'y Gen. OR2015-2078, OR2016-05136, and OR2015-20522. But, again, none of these rulings involved the type of information requested here. OR2015-02078 dealt with whether an autopsy report, police report, and crime scene photos were excepted under § 552.108. OR2016-05136 dealt with whether communication records to the president of Texas A&M University pertaining to applicant

25

recommendations were excepted under § 552.114. [9] OR2015-20522 dealt with whether correspondence regarding admissions, applicants, or prospective applicants during a specified time was excepted under § 552.101. [10] Finally, as we discussed above, the plain language of § 552.114(d) shows that it can only apply to redactions "from information disclosed under [the PIA]." TEX. GOV'T CODE ANN. § 552.114(d). As a result of the foregoing, none of the OAG decisions cited by the University addressed the issues in this case, and the University could not have reasonably relied on them as justification for withholding information under the PIA.

Finally, we address the trial court's stated reason for denying the Statesman's motion for attorney's fees. In an email to counsel sent in conjunction with his denial of the Statesman's motion, the trial court stated it was denying the motion because the University had "relied, in good faith, on a plausible interpretation [of § 552.114(d)]." Because a party's good faith interpretation of a statute that had never been interpreted by a court is not among the listed exceptions to § 552.323's mandatory fee provision, and because we have determined that the University could not have reasonably relied on any of the cited appellate decisions or OAG decisions, we hold the trial court abused its discretion in denying the Statesman's motion for attorney's fees. Accordingly, the Statesman's sole issue on cross-appeal is sustained.

Although the Statesman urges us to render an award of attorney's fees, we conclude the proper disposition is to remand the issue of the amount of reasonable attorney's fees, including, but not limited to, those incurred as a result of this appeal. *See Serafine v. Blunt*, No. 03-16-00131-

---

[9] Notably, this OAG decision responds substantively to a request for an OAG determination under § 552.114 where Texas A&M apparently did not submit the actual records for the OAG to review, but the OAG was able to issue a decision anyway. Tex. Att'y Gen. OR2016-05136. Additionally, the letter itself states: "This letter ruling is limited to the particular information at issue in this request and limited to the facts as presented to us; therefore, this ruling must not be relied upon as a previous determination regarding any other information or any other circumstances." *Id*.

[10] This OAG decision also contains an identical disclaimer as OR2016-05136 stating that the ruling must not be relied upon as a previous determination.

CV, 2017 WL 2224528 (Tex. App.—Austin May 19, 2017, pet. denied) (mem. op.) (remanding for determination on the reasonableness of attorney's fees after the trial court erred in denying a motion for mandatory attorney's fees). Accordingly, we remand this cause to the trial court for a determination of reasonable attorney's fees incurred by the Statesman.

## V. CONCLUSION

We affirm the trial court's final judgment except for the portion denying the Statesman's motion for attorney's fees under § 552.323(a), which portion we reverse and remand to the trial court with instructions to determine and award the Statesman reasonable attorney's fees incurred in its action against the University.


GINA M. PALAFOX, Justice

November 29, 2022

Before Rodriguez, C.J., Palafox, and Alley, JJ.

27